STATE, RESPONDENT, *v.* PAPP, APPELLANT.

(No. 3,572.)

(Submitted November 4, 1915.   Decided November 22, 1915.)

[153 Pac. 279.]

*Criminal Law—Assault With Deadly Weapon—Evidence—Sufficiency — Trial—Argument—County Attorney—Misconduct— Harmless Error.*

Criminal Law—Assault With Deadly Weapon—Evidence—Sufficiency.
   1.  Under an information charging that defendant committed an assault with a loaded revolver with intent to kill, evidence *held* sufficient to show that defendant was armed with a loaded revolver, and hence had the present ability to inflict physical injury, and that he pointed it at the complaining witness under such circumstances as to create in the latter's mind a well-founded apprehension of impending injury,

and to warrant a verdict of guilty of assault in the first or second degrees.

Same—County Attorney—Argument—Misconduct—Harmless Error.

2.   While it is gross misconduct on the part of the prosecuting attorney, during the course of his argument to the jury, to impute statements to a witness not in evidence, and draw inferences therefrom unfavorable to the defendant, such conduct *held* without prejudice where during the trial evidence of the character referred to by him was brought to the attention of the jury.

[As to misconduct of attorneys at trial and its effect, see note in 100 Am. St. Rep. 690.]

Same—Legitimate Argument—Bounds of.

3.   Under the circumstances made apparent in the case at bar, epithets applied to the defendant and a witness by the county attorney in the course of his argument, while coarse and inelegant, did not transcend the bounds of legitimate argument.

[As to argument by prosecuting attorney that an acquittal would encourage lynch law as ground for reversal, see note in 51 L. R. A. (n. s.) 664.]

*Appeal from District Court, Silver Bow County; Michael Donlan, Judge.*

ULYSSES PAPP was convicted of an assault in the second degree, his motion for a new trial was overruled, and he appeals from the judgment and an order denying his motion for a new trial. Affirmed.

*Mr. M. F. Canning* and *Mr. M. Kerr Beadle,* for Appellant, submitted a brief; *Mr. Beadle* argued the cause orally.

*Mr. D. M. Kelly,* Attorney General, and *Mr. C. S. Wagner,* Assistant Attorney General, submitted a brief; *Mr. Wagner* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant, charged by information with the crime of assault in the first degree, was found guilty of assault in the second degree, and sentenced to serve a term of one year in the state prison.   He has appealed from the judgment and an order denying his motion for a new trial.   The charge is that: "The [1] said defendant did willfully, unlawfully, wrongfully, intentionally and feloniously assault one Frank Knuckey, then and

there a human being, with a loaded weapon, to-wit, a revolver, * * * which said revolver was then and there a deadly weapon, likely to produce death, with intent in him, the said defendant, then and there to kill and murder the said Frank Knuckey.'' The principal contention made in defendant's behalf is that there is not sufficient evidence to justify the verdict. The case was submitted on the testimony of the state; the defendant not having introduced or offered any evidence.

The events out of which the charge grew are, briefly stated, the following: At about 12:30 o'clock on the morning of April 16, 1914, W. J. Sidley and Mike Nerny, two of the state's witnesses, hired Frank Knuckey, a chauffeur who drove an automobile for hire in the city of Butte, to take a party consisting of themselves and two young girls, Alice Day and Lena Germo, from the city to O'Neill's Roadhouse, referred to by the witnesses as the Three-Mile House, situated about three miles away in the valley south of the city, and thence to another place of the same character farther away in the same direction, referred to by the witnesses as the Five-Mile House. As the car passed the corner of Main and Park Streets on the way out of the city, defendant observed it, and, apparently not addressing anyone of the occupants in particular, said: ''I will get you folks yet.'' The evidence does not disclose directly why he made use of this language importing a threat, or why he should have addressed Knuckey or any one of the party. The circumstances, however, justify the conclusion that the expression was prompted by jealous anger because one of the girls had accepted Nerney as her companion for the time instead of the defendant. Whatever prompted it, it is clear that the defendant was angry at some member of the party. After the party had passed on he endeavored to secure a car to go in pursuit. This he failed to do, because the chauffeur to whom he applied did not think the pursuit would be successful, because his car was unable to attain the speed of that driven by Kunckey. Subsequently, by some means which the evidence does not disclose, he, in company with another man not identified, found his way out to the vicinity of

the Five-Mile House. He there met the Knuckey car returning to the city. He and his companion were on foot. They were either waiting to meet the party on the return, or were proceeding to the Five-Mile House to find it there. This was about 3:30 o'clock. Before starting on the return, Knuckey had been informed by a telephone message from the city that the defendant was in pursuit, and had communicated the information to his passengers. Both he and they were on the lookout for the defendant, anticipating trouble if he met them. About 300 yards from the Five-Mile House, after starting on the return, Knuckey and his party observed the defendant and his companion standing in the roadway with their hands up signaling Knuckey to stop the car, and making threatening demonstrations. Knuckey was then driving the car at a speed of about sixty miles an hour. He did not stop, but "ducked" behind the steering wheel, and, though he permitted the car to swerve for an instant, he immediately righted it and drove it straight forward, compelling the defendant and his companion to stand hastily out of the way, one of them narrowly avoiding being run down. The passengers also "ducked," because they were afraid defendant would shoot. There is some conflict in the statements of Knuckey and his passengers as to what the attitude of the defendant was at the moment the car passed. It is apparent also that each of them was reluctant to make a full disclosure as to what actually transpired. We shall not attempt to quote or state the evidence in detail, but only what it tends to establish, assuming, as we must, that the jury resolved the conflicts in favor of the state.

As the car approached the defendant he had some object in his hand. Some of the members of the party identified it as a revolver. One of the witnesses saw it glisten in the light from the lamps on the car. It was pointed directly at Knuckey. Others of them did not venture an opinion as to what it was. As the car swept by, two distinct explosions were heard, the second following the first at an interval of one or two seconds. Some of the party did not hear these explosions because of the roar of the engine. That they were pistol or gun shots, however,

is fully established by the testimony of Sidley, who distinguished them from the roar of the engine, and of another witness who heard them while standing in front of the Five-Mile House watching the tail-lights of the car as it sped away in the darkness. The last witness was an experienced chauffeur, and stated, in effect, that the engine of a car being driven with the cut-off valve open, as was the case with Knuckey's car on this occasion, cannot cause explosions such as he heard. He stated that he knew what a pistol or gun shot is, that he did not see any flash, but that the reports he heard were reports from a pistol or gun fired in close proximity to the car as it moved away. This witness had heard of defendant's pursuit of the Knuckey car, and had informed the latter of the fact before he started on his return to the city.

Upon this evidence the jury found, and were justified in finding: (1) That the defendant was armed with a loaded revolver, and hence had the present ability to inflict physical injury; and (2) that he pointed it at Knuckey under such circumstances as to create in his mind a well-founded apprehension of impending injury. They thus found all the elements of an assault within the rule stated by this court in *State* v. *Barry,* 45 Mont. 598, 41 L. R. A. (n. s.) 181, 124 Pac. 775, wherein the authorities on the subject are cited and reviewed at length. It is therefore sufficient for present purposes to say that the court properly submitted to the jury the question whether the defendant, if not guilty of assault in the first degree under subdivision 1 of section 8312 of the Revised Codes, was not guilty of assault in the second degree as defined in subdivision 4 of section 8313, all of the elements of which are included in the crime as defined in the former and as charged in the information. It is true that the evidence is not as satisfactory as it might have been, because the witnesses who observed the incident for some reason minimized, as far as possible, the value of their testimony. Even so, it cannot be said that the jury based their verdict upon mere suspicions and probabilities, instead of substantial evidence, as counsel contend.

In several instances counsel for defendant took exception to
[2]  remarks made by the county attorney during the course
of his address to the jury.  In one instance the latter imputed
to the witness Lena Germo the statement that she had some
time before stayed two nights in a room with the defendant.
Counsel for defendant objected and asked that the statement be
stricken out.  The request was denied.  The ruling was errone-
ous because the witness had not so stated, but, under the facts
established in the case, was error without prejudice.  Of course,
it is not permissible for the county attorney to assume, during
the course of his argument, the existence of facts not in evidence
and draw inferences therefrom unfavorable to the defendant,
even though objection is not made by him.  If its attention is
drawn to such conduct, the court should promptly interfere.
The statement of such facts is, in effect, to put before the jury
evidence not given under oath.  Such a course is gross miscon-
duct, even more objectionable than the putting of questions to
witnesses which assume the existence of facts not admissible as
independent evidence.  (*State* v. *Jones,* 48 Mont. 505, 139 Pac.
441.)  It was made apparent by the evidence that there had ex-
isted between the defendant and the witness a criminal intimacy,
and that her disregard of his assumed exclusive right to her
favor on the evening in question was the cause of his conduct.
The assumption by the county attorney of the statement imputed
to the witness did not therefore put into the evidence any fact
not already in the possession of the jury.

In two other instances objection was made by counsel to
[3]  statements by the county attorney characterizing by
epithets the defendant and one of the witnesses who testified for
the state, and the court was requested to admonish the jury
to disregard them.  The assignments in this behalf may be dis-
posed of by the remark that, while the statements may be classed
as coarse and inelegant, the use of them did not, under the
circumstances, transcend the bounds of legitimate argument.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.