STATE, Respondent, *v.* KARRI, Appellant.

(No. 6,362.)

(Submitted January 11, 1929.  Decided February 5, 1929.)

[276 Pac. 427.]

*Messrs. Binnard & Rodger*, for Appellant, submitted a brief; *Mr. Joseph Binnard* argued the cause orally.

132

*Mr. L. A. Foot,* Attorney General, and *Mr. S. R. Foot,* Assistant Attorney General, for Respondent, submitted a brief, the latter arguing the cause orally.

HONORABLE O. F. GODDARD, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, disqualified, delivered the opinion of the court.

Howard A. Johnson, county attorney of Jefferson county, filed an information on the tenth day of November, 1927, by which information the defendant was charged with assault in the second degree, alleged to have been committed on the fifth day of December, 1926, it charging that the said Ed Karri did wilfully, wrongfully, unlawfully, and feloniously assault another, to-wit, one Steve Corrier, by the use of a weapon likely to produce grievous bodily harm, to-wit, a pistol. The jury returned a verdict of guilty of the crime of third degree assault, and fixed the punishment of the defendant at thirty days in the county jail of Jefferson county, and a fine in the sum of one hundred dollars. Motion for new trial was by the court overruled. This appeal is from the judgment and denial of defendant's motion for a new trial.

The evidence in the case shows that on the fifth day of December, 1926, the complaining witness Corrier was put to work on what is known as the Tucker mining claim, owned by J. L.

Templeman, of Butte, by Lee Dever who was looking after the claim as agent for the owner; that Corrier was digging through a wash to find a lead inside of the inclosure of defendant: that while Corrier was digging on this claim the defendant came along and a controversy arose between him and Corrier as to the right of the latter to be upon this claim within the defendant's inclosure, the defendant claiming that the digging was being done on his land, which was disputed by Corrier; and, as testified to by the latter, the defendant said ''he wanted to know what I was digging there for. 'You are on my ground.' I said, 'I don't think so.' He said, 'You are on my ground.' I told him that Dever put me to work there, and he says, 'You are on my ground.' And then he put his hand in his coat pocket and pulled out a handkerchief with a gun in it. During the time he was handling the gun he told me to cover up the hole or he would kill me. He said to cover up the hole or he would kill me if I didn't. He wrapped and unwrapped the gun and held it in his hands there where I was digging for about fifteen minutes. Then I started to fill up the hole. It took me about three-quarters of an hour or so. I filled up the hole and then hitched up my horse and went home.''

The defendant was examined in his own behalf, and, being a foreigner, stated, ''I cannot really understand. I am very short of the English language. I can't understand.'' He was examined for some time without an interpreter and his answers to questions were more or less unintelligible. Finally an interpreter was sworn and the examination of the witness proceeded with the assistance of the interpreter. The witness testified that he and his daughter went to the place where the complaining witness was digging and that the gate was open; that the horse of the complaining witness was in the field and the little girl drove it out. The complaining witness objected to the child driving the horse out, but the defendant told her to go ahead. The horse was driven out and the gate closed. The complaining witness went to recover his horse. The horse had a piece of log chain on one of his forelegs. The

complaining witness testified that he brought the horse back, took the chain off and hung it over the horse's neck. The defendant, however, testified that the complaining witness held the chain in his hand, and that that was the reason he drew the pistol and that he was afraid the complaining witness would assault him with the chain, but the defendant did not deny that he told the complaining witness to fill up the hole or he would kill him.

The defendant further testified that he took the handkerchief, in which the pistol was wrapped, out of his overcoat pocket and that he had just shown a little of the pistol and let him see it, at the same time wrapping it up right away, putting the pistol back again in his pocket and walking down the road. He also testified that he did not swear at the complaining witness or call him any names, did not offer to strike him in any way, did not clench his fists and did not point the pistol at him; that he did not rush towards the complaining witness and did not intend to shoot him; that he just took the pistol out of the handkerchief and out of his pocket and wrapped it up again, put it back in his pocket and started to walk away, and told Corrier, "You cover up the hole," and that the defendant then went down to Corbin and took the train to Butte.

The defendant stated that there was no cartridge in the barrel of the pistol, but that there were two cartridges in the magazine. The defendant described how it was necessary to put a cartridge from the magazine into the barrel of the gun by manipulating a clip on the pistol, stating that the safety was on the revolver all the time; that he never moved the safety down; that in order to put a cartridge in the barrel of the revolver from the magazine it was necessary to release the safety and pull back the barrel, and indicated how the operation of loading the pistol was accomplished; that in order to discharge the revolver it was necessary to release the safety and put the cartridge from the magazine into the barrel, and that that was not done at all.

Defendant's testimony also showed that since the incident he had moved the fence so that it was located about a hundred feet away from the line; that at the time of this altercation the fence was along the side of the hole; that the hole was outside of the fence at the time, and that after the incident Mr. Karri moved his fence about two hundred feet.

The complaining witness Corrier, in rebuttal testified in reference to the hole that he was digging, which was about twelve feet outside of the fence; that at the time the defendant came up he was doing nothing except holding the horse; that he had gone after the horse and brought him back, but did not still have hold of the horse all the time when this conversation was held; that for a part of the time he went and tied the horse; that the chain was on the horse's neck and that he did not have it in his hand during the conversation; that "he just wanted me to cover up the hole. He say, 'You got to cover up this hole or I will kill you.'"

Defendant's first assignment of error is based upon the ██ ruling of the court upon the question propounded by the county attorney to the prosecuting witness: "Q. Were you afraid he might shoot you if you didn't?" Appellant insists that the question propounded to the witness was leading and suggested the answer desired. One of the ingredients of the crime of assault in the second degree is as to whether the complaining witness was actually put in fear of immediate bodily injury, and that the circumstances of the case were such as ordinarily will induce such fear in the mind of a reasonable man. We do not see how a question could be framed to elicit the answer of the witness as to his fear of immediate bodily injury which would be less objectionable than the question propounded to the witness in this case. If the question had been put in the alternative, as to whether or not the witness was actually afraid of the defendant doing him bodily harm if he did not obey the orders of the defendant, the courts generally would approve such a question. The question propounded could be answered "Yes" or "No," but the witness said, in

answer to the question, "That is what I thought, if I didn't." The question was not leading. (Sec. 10663, Rev. Codes 1921.)

Section 10977 of the Revised Codes of 1921 defines assault in the second degree as follows: "Assault in the second degree. Every person who, under circumstances not amounting to the offense specified in the last section:

"1. With intent to injure unlawfully, administers to, or causes to be administered to, or taken by another, poison, or any other destructive or noxious thing, or any drug or medicine, the use of which is dangerous to life or health; or,

"2. With intent thereby to enable or assist himself, or any other person, to commit any crime, administers to, or causes to be administered to, or taken, by another, chloroform, ether, laudanum, or any other intoxicating narcotic, or anesthetic agent; or,

"3. Wilfully or wrongfully wounds or inflicts grievous bodily harm upon another, either with or without a weapon; or,

"4. Wilfully and wrongfully assaults another by the use of a weapon or other instrument or thing likely to produce grievous bodily harm; or,

"5. Assaults another with intent to commit a felony, or to prevent or resist the execution of any lawful process or mandate of any court or officer, or the lawful apprehension or detention of himself, or of any other person, is guilty of an assault in the second degree, and is punishable by imprisonment in the state prison for not less than one nor more than five years, or by a fine not exceeding two thousand dollars, or both."

Section 10978 defines assault in the third degree as follows: "Assault in the third degree. Every person who commits an assault or an assault and battery, not such as is specified in the foregoing sections of this chapter, is guilty of assault in the third degree, and is punishable by imprisonment in the county jail not more than six months, or by a fine not more than five hundred dollars, or both."

The information in this case is based upon subdivision 4 of section 10977, supra.

Assignments 2 and 3 are based upon the insufficiency of ▮ the evidence to warrant the court in submitting the case to the jury. We have quoted only the salient features of the evidence bearing upon the questions involved in the motions of the defendant to direct a verdict for the defendant. But while we have not set forth all of the evidence in the case, we have examined it and given it full consideration and are satisfied that upon the whole it was a case for the jury, and, therefore, conclude that there was no error in the ruling of the court on the motions for directed verdict.

The remaining assignments of error relate to instructions of the court, namely: instructions seven, eleven and twelve.

Instruction number seven reads as follows: "You are ▮ instructed that if you believe from the evidence in this case beyond a reasonable doubt that the defendant exhibited a pistol to the complaining witness and threatened to kill said witness, and if you further believe that at the time said pistol was exhibited and said threat was made that said pistol was a weapon which was likely to produce grievous bodily harm, and that the defendant was at the time within shooting · distance of complaining witness, and that at the time said witness was actually put in fear of immediate bodily injury therefrom and that the circumstances of the case were such as ordinarily to induce such fear in the mind of a reasonable man, then you should find the defendant guilty of assault in the second degree, unless you find that defendant was justified in acting as he did in accordance with the law as elsewhere given to you in these instructions.

"You are further instructed that if you do not believe from the evidence beyond a reasonable doubt that said weapon was at the time one which was likely to produce grievous bodily harm, but that you do believe from the evidence beyond a reasonable doubt that the defendant exhibited the weapon to complaining witness and threatened to kill him, and that at the time, defendant was within shooting distance of complaining witness, and that complaining witness had reasonable cause

to believe that said weapon was likely to produce grievous bodily harm, and that complaining witness was actually put in fear of immediate bodily injury therefrom, and that the circumstances of the case were such as ordinarily to induce such fear in the mind of a reasonable man, then you should find the defendant guilty of assault in the third degree, whether the weapon was such a one as was likely to produce grievous bodily harm or not, unless you find that defendant was justified in acting as he did in accordance with the law as elsewhere defined to you in these instructions."

We think the first paragraph of instruction number seven correctly states the law applicable to the case. The last portion of the instruction repeats matters involved in the first portion of the instruction. Then it states, "then you should find the defendant guilty of assault in the third degree, whether the weapon was such a one as was likely to produce grievous bodily harm or not; unless you find the defendant was justified in acting as he did in accordance with the law as elsewhere defined to you in these instructions."

As we regard this case, under the evidence as disclosed in the record, the defendant was guilty of assault in the second degree or not guilty at all. In other words, the evidence is not sufficient to warrant the court in giving an instruction applicable to the law in relation to the crime of third degree assault. There is no evidence that the defendant attempted in any way to assault the complaining witness, except with a loaded firearm, and in the manner set forth in the first paragraph of the instruction, which would constitute an assault in the second degree. Therefore, we conclude that the last paragraph of the instruction as it relates to assault in the third degree, was unwarranted, and the trial court erred in giving it.

The court gave instruction number eleven, as follows: "You are instructed that one ejecting a trespasser is guilty of an assault if he uses more force than is necessary, as when he uses a dangerous or deadly weapon."

We can conceive of an instance or condition under which the owner of premises on which the complaining witness is a trespasser would be justified in the use of a dangerous or deadly weapon to eject the trespasser from the premises, for the reason that the owner of premises might use all necessary force to eject the trespasser without effecting the purpose, and that after the use of such force, defendant under certain circumstances, might be justified in the use of a dangerous or deadly weapon; therefore, we think the giving of instruction number eleven was erroneous and not justified under the evidence of the case.

We come now to the alleged error in giving instruction number twelve, which reads as follows: "You are instructed that to use force or violence upon the person of another is not unlawful when committed by the defendant in preventing or attempting to prevent a trespass or other unlawful interference with real property in his possession, if the force or violence used is not more than sufficient to prevent such offense; but that such force used for any other purpose, as for repairing damage done, is unlawful and constitutes an assault."

The evidence in this case as to the exact place where the complaining witness was digging the trench or hole is contradictory, and it is difficult to ascertain therefrom whether or not the digging was done within the inclosure of the defendant. Upon the theory that the digging was within the inclosure of the defendant, we find no error in the instruction.

For the reasons stated, the judgment is reversed and the cause is remanded to the district court of Jefferson county for a new trial.

Mr. Chief Justice Callaway and Associate Justices Matthews, Galen and Ford concur.