STATE, RESPONDENT, *v.* SEMMENS, APPELLANT.

(No. 7,680.)

(Submitted May 24, 1937. Decided July 3, 1937.)

[71 Pac. (2d) 913.]

*Mr. Seth Bohart,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. Carl N. Thompson,* Assistant Attorney General, submitted a brief; *Mr. Thompson* argued the cause orally.

HONORABLE C. F. HOLT, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, disqualified, delivered the opinion of the court.

The defendant, Gilbert Semmens, was convicted in ·the district court of Gallatin county of grand larceny. This appeal is from the judgment and from an order denying him a new trial.

Semmens was charged jointly with one Bob McMann, who has not been apprehended, with grand larceny on or about the 26th day of November, 1934, from the Three Forks Portland Cement Company, a corporation, of approximately 148 cases

of DuPont explosives, more particularly described as "⅞x8—Special Gelatin—40% strength," of the value of more than fifty dollars, being the property of said corporation.

Twenty-one specifications of error are claimed, which may be considered under five general headings: (1) Admission of Exhibits 8 and 9, being two rolls of Monarch fuse in proving other offenses; (2) the State's failure to identify the property stolen; (3) failure of the State to prove that the defendant participated in the larceny; (4) the court's right to have the verdict corrected after it was read, the jury polled and before the jury was discharged; and (5) refusal of the court to give instructions offered by the defendant.

Briefly, the record shows the facts as follows: Just prior to the 28th day of November, 1934, on two occasions, Bob McMann, accompanied by defendant, tried to rent from Mr. Farris and his brother Frank, at Butte, Montana, a truck which was owned by them. On these occasions, in the presence of defendant, McMann stated that he wanted a truck to make a trip but did not want a driver. The first time McMann, in the presence of defendant, offered $50 for its use, and the second time he offered to pay $100 for its use, but not in the presence of the defendant. The Farris brothers refused to rent the truck unless one of them drove it. On November 27, 1934, McMann, accompanied by defendant and one Jack Yelaka, who knew Steven LaHood, went to LaHood's home in Butte, where Yelaka introduced them to LaHood, and after some discussion about renting his truck without a driver, McMann, in the presence of defendant, rented the truck from LaHood and paid him $50 for its use. He was to keep the truck for five or eight hours, defendant stating they were going about fifty miles. LaHood told them the truck brakes were not good and should be fixed. When the truck returned the brakes had been tightened. This was about 3 P. M., and as LaHood had to unload some Christmas trees from the truck, the defendant and McMann left and returned at about 3:30 P. M., at which time LaHood gave them two of the Christmas trees. McMann and defendant left with the truck about 3:30 P. M., on November 27th, 1934, and re-

turned with it between 11 and 12 o'clock that night. At that time the truck had dual wheels on the rear, and all wheels on the truck were equipped with Goodrich Silvertown tires with good treads.

The powder house of the Cement Company near Trident, Gallatin county, Montana, was entered the night of the 27th of November, 1934, this fact having been discovered on the morning of the 28th of November, 1934, and while the testimony is conflicting, the Cement Company's records show that 148 cases of "⅞x8, DuPont Special Gelatin, 40% strength" powder were missing from the powder house. There had been a light rain and snow the night of November 27th, and tracks at the powder house showed a truck with dual Silvertown tires, which were traced toward Butte to the oiled road. Some time after February 5, 1935, A. E. Workman, a deputy sheriff from Gallatin county, and W. McKenna, after considerable investigation, obtained information about some powder sales at Butte, and purchased two boxes from Harold Anderson at Butte of powder similar to that which had been stolen, and arranged with him to purchase more the following week. On February 12, 1935, McKenna met Anderson, who took McKenna's car to locate the party from whom he was to get the powder. Workman, with the sheriff of Gallatin county and others, followed Anderson when he left. Anderson located the defendant and returned with him and the powder. McKenna gave Anderson the marked money which he (Anderson) gave to defendant, and in whose possession the same was later found by these officers, who arrested both Anderson and defendant shortly after the transaction was completed. The officers had seen the car in which defendant was riding stop at a garage, so that after arresting defendant they, together with the undersheriff of Silver Bow county, Montana, went to the garage and opened it with one of the keys found in defendant's possession. Examination of the garage revealed 115 cases of powder, similar to that stolen, as well as two rolls of Monarch fuse, two Christmas trees, and other property. Upon being arrested the defendant was searched

and upon his person was found, besides the marked money given by defendant to Anderson, and the key that unlocked the garage padlock, a key that unlocked the padlock which was on the powder house of the Cement Company at the time the powder was stolen. Evidence also showed that on one occasion the defendant shortly prior to his arrest, accompanied McMann to Pony, Montana, where McMann sold and delivered four cases of such powder to Clyde Kneedler for $5, being about one-third of the wholesale price at that time, and that defendant sold powder on other occasions shortly before this time, and after November 28, 1934, the price ranging from $5 to $7 per case. The powder located at the garage checked as to the kind and dating, where the dating had not been defaced, with that stolen from the powder house of the Cement Company, and so far as the dating on each box is concerned, it was the only powder of its kind and dating shipped into Montana as shown by the DuPont Company records.

Defendant testified that he had been asked by one Roger Murphy to look after and sell this powder for him, which he was doing. He first met Murphy in 1933 when he (Murphy) tried to sell him some powder; that he (defendant) was in Butte during all the night of the 27th of November, 1934; and two witnesses testified that they saw and talked with him shortly after 11 P. M. that night. Another witness testified that Murphy tried, shortly after Thanksgiving, 1934, to rent a powder house from her husband. Defendant testified that Murphy rented the garage in which the powder was stored from a Mrs. Silver, but she was not called as a witness for either the state or the defendant. A Butte policeman testified that he had made inquiry in Butte, and particularly at the Walker place, at which Murphy was supposed to have frequented, but no one knew him.

Defendant claims error in the court's admission, over objection, of Exhibits 8 and 9, which consisted of two rolls of Monarch fuse found in the garage in Butte in which the powder, similar in kind and number to that stolen was found, which fuse, the evidence showed, was missing after the Cement Com-

pany's powder house was entered between the 1st and 8th of August, 1934. This property, while not stolen at the same time as the property charged in the information, was taken the first part of August of the same year from the same place, found stored in the same garage, recovered at the same time, and was identified as the property of the Cement Company. "Evidence is admissible which shows or tends to show the perpetration by a person accused of crime of other like independent offenses at about the same time, in proof of his identity, in corroboration of other testimony respecting the particular offense charged, to establish a uniform plan or course of conduct, and also, in order to show guilty knowledge, motive or intent on the part of the accused, and in negation of likelihood of crime having been committed as a result of inadvertence, accident, or mistake." (*State* v. *Hughes*, 76 Mont. 421, 246 Pac. 959.)

This evidence was admissible to show a scheme on the part of defendant. "The possession of property by the defendant soon after it was stolen was itself an incriminatory fact, not sufficient, standing alone, to warrant conviction; nevertheless the fact of such possession, coupled with the changed brands, knowledge of which he must have had, and, further, the fact that he received, at different times, animals with many different brands, without inquiry as to whence they came, tended in some measure, at least, to support the inference that a conspiracy existed; and since the different larcenies were committed as parts of the scheme, evidence of them was competent, because every act done in furtherance of it could properly be proved as part of it, even if the proof of it tended to establish a distinct crime." (*State* v. *Allen*, 34 Mont. 403, 87 Pac. 177.) "The length of time over which evidence of another offense may be admitted is a matter of sound discretion of the court." (Underhill on Criminal Evidence, sec. 182.) Taking this evidence with other testimony, the state substantially established the defendant's guilt as to such crime to comply with the rule stated in the cases of *State* v. *Ebel*, 92 Mont. 413, 15 Pac. (2d) 233, and *State* v. *Simanton*, 100 Mont. 292, 49 Pac. (2d) 981.

Defendant next contends that the powder stolen from the ▮ powder house on November 27, 1934, was not sufficiently identified. The record shows that "DuPont $7/8$x8—Special Gelatine—40% strength" was manufactured at its plant at DuPont, Washington; that with the exception of three counties the sale of DuPont products in Montana was handled through the Denver branch office; that this kind of powder was packed in wooden boxes, fifty pounds to a box; that the boxes were dated and a record of all shipments and dating on boxes was kept by the plant office; that the Cement Company also kept a record of the datings on the boxes received; that the shipments to the Cement Company were the only sales into Montana of this kind of powder with the box datings shown thereon; that the kind of powder and the datings on the boxes found in the Butte garage corresponded with those shipped by the DuPont Company to and received by the Cement Company, and which powder was later stolen from the Cement Company's warehouse on the night of the 27th of November, 1934. The property was sufficiently identified.

As to the proof of defendant's participation in the larceny, ▮ the defense testimony was that the defendant was in Butte during all the day and night of the 27th and 28th days of November, 1934; that he was selling this powder for a person by the name of Roger Murphy; that Murphy rented the garage in which the powder was stored, and shortly before Thanksgiving 1934, had tried to rent a powder house from a person named Farron at Butte; that defendant knew nothing about, and had no part in, the larceny charged. It was a question of fact for the jury to say whether or not the explanation given by the defendant and his witnesses was false or true (*State* v. *Grimsley*, 96 Mont. 327, 30 Pac. (2d) 85), and the jury was warranted in disregarding any or all of the testimony of defendant and his witnesses, even though it was not directly contradicted, if they did not believe it to be true. (*State* v. *Willette*, 46 Mont. 326, 127 Pac. 1013.) The facts and circumstances proved by the state were sufficient to establish defendant's participation in the crime charged.

When the jury reported its verdict the same was examined ■ by the presiding judge and read by the clerk, after which the jury stated that it was their verdict. Thereafter, and before the jury was discharged, it was called to the court's attention that the verdict read, "We, the jury in the above entitled cause find the defendant guilty of the crime of larceny," etc., and as there were two defendants charged under the information, although only one defendant, Gilbert Semmens, was tried, the court sent the jury back to the jury room after which it brought in its verdict against this defendant. Defendant contends that the court erred in permitting the jury to alter or change the verdict. This contention is not well taken, as a jury may correct its verdict up to the time it is discharged from the case by the court. (Sec. 9359, Rev. Codes 1935; *In re Thompson,* 9 Mont. 381, 23 Pac. 933.)

We find no error in the action of the court in refusing instructions offered by defendant and no merit in the other objection raised by defendant.

The judgment and order are affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.