STATE, Respondent, *v.* QUINLAN, Appellant.

No. 9120.

Submitted January 14, 1952. Decided May 27, 1952.

244 Pac. (2d) 1058.

Mr. Leon L. Bulen and Mr. Urban Simon, Missoula, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Thomas F. Joyce, Asst. Atty. Gen., Mr. Wesley Castles, Co. Atty., Missoula, for respondent.

Mr. Bulen, Mr. Olsen and Mr. Castles argued orally.

MR. JUSTICE FREEBOURN:

Defendant was convicted of assault in the first degree and by the court sentenced to serve "twelve years at hard labor at the Montana State Prison." From the judgment of conviction defendant appeals.

The information charged that defendant "did * * * with intent to commit a felony upon the person of one George Paul Woods, assault him with a loaded firearm, to-wit: a 38 caliber revolver, on Stevens Street between Broadway and Main Streets in Missoula, Montana * * *." The jury was instructed upon and allowed to consider assault in the first degree and assault in the second degree.

Insofar as is applicable here, assault in the first degree is defined as follows: "Every person who, with intent * * * to commit a felony upon the person or property of the one assaulted or of another:

"1. Assaults another with a loaded firearm, or any other deadly weapon, or by any other means or force likely to produce death * * * is guilty of assault in the first degree * * *." R. C. M. 1947, sec. 94-601.

Assault in the second degree, as applicable here, is as follows: "Every person who, under circumstances not amounting to the offense specified in the last section: * * *

"5. Assaults another with intent to commit a felony * * * is guilty of an assault in the second degree * * *." R. C. M. 1947, sec. 94-602.

While, "Every person who commits an assault or an assault and battery, not such as is specified in the foregoing sections of this chapter, is guilty of an assault in the third degree * * *." R. C. M. 1947, sec. 94-603.

The essence of the crime of assault as charged in the information is the intent to commit a felony upon the person of Woods. See State v. Schaefer, 35 Mont. 217, 88 Pac. 792.

As stated by this court: "* * * it is incumbent upon the prosecution to prove every material allegation of the information beyond a reasonable doubt" in an assault case. See State v. Barry, 45 Mont. 598, 124 Pac. 775, 776, 41 L. R. A., N. S., 181.

So that before a case could be made against defendant amounting to first or second-degree assault, the prosecution had to prove, by satisfactory evidence, that at the time defendant assaulted Woods by pointing the pistol at him defendant intended to commit a felony upon Woods.

Whatever felony the prosecution expected to prove defendant intended to commit on Woods, it had to be defined by written instructions to the jury before the jury could determine if the evidence showed such intended felony. Such instructions should have been, but were not, given. The court could not assume such intended felony was proven, as it was a fact to be determined by the jury. See State v. Sloan, 35 Mont. 367, 89 Pac. 829.

Since the jury had no way of knowing what felony, if any, defendant intended to commit upon Woods when he pointed the pistol at him, the jury should have been allowed to consider whether or not defendant was guilty of third degree assault, and it was error to refuse defendant's instruction defining the same.

The evidence shows that defendant, a part-time bartender and clean-up man in the Hawthorn tavern, under the influence

of beer and liquor, drank a large amount of benzedrex in beef tea. From different witnesses and before the alleged assault, it appears that defendant "looked sick." "He was awfully pale" and looked "like the man had just fainted; * * * he didn't seem to stagger; he just looked like his mind was blank. * * * He talked loud, not like he normally does; * * * his eyes were kind of glassy;" they were "droopy."

Late in the afternoon while in this condition in the Hawthorn club, defendant "was raving about Stubby at the Park." Stubby was manager of the Park hotel and, as defendant puts it, Stubby and he had "always been good friends." He took a pistol from behind the bar and left the place. Although he did not say anything, he left the bartender "under the impression he was going after Stubby."

If he had any intention of harming Stubby, such intention was never carried out or attempted to be carried out. He did not see Stubby and Stubby did not see him.

Sometime later we find defendant being picked up by a taxicab driver at the Palace bar. In the cab he told the cab driver, Woods, to take him to Kellogg, Idaho. "Here's the fare," he said, and pointed the pistol at the driver. According to the cab driver, "He told me to start driving or he would kill me right there. * * * I didn't think he would shoot; that there was any reason for him to shoot me. * * * I would judge it was at least five minutes before I started driving. I know we talked for some time before I did start driving. * * * He didn't say anything except that he would kill me if I didn't start driving. * * * I was very scared."

The driver did not drive in the direction of Kellogg. Instead he drove in another direction to the cab office, where a policeman arrested defendant as he got out of the cab with the pistol in his front pants pocket.

Defendant said he remembered nothing of the assault. He last recalled wanting to fight "some big Norwegian." When the Norwegian would not fight defendant "got mad." "Just at that time" defendant "thought the whole town had torn

loose.'' He next remembered of being in jail, where he was taken after his arrest. At that time ''it sounded like—it's hard to explain. The nearest I can explain it is to go over to the roundhouse with a Mallet starting up with the petcocks open.''

Dr. C. H. Waldon testified that 10 milligrams of benzedrex was the accepted dose, and that 250 milligrams, the amount taken by defendant, would be ''an extra large overdose;'' that it would first produce alertness, then ''as the action of the drug would progress * * * it would lead to mental confusion, hallucination, delirium and slurred speech.'' He said a person might not remember what he had done while under its influence.

Under the evidence defendant's proposed instruction No. 3, relating to commission of crime by persons not conscious thereof, R. C. M. 1947, sec. 94-201, subd. 5, offered and refused, should have been given.

If defendant intended anything when he pointed the pistol at Woods, it was to cause Woods to give him a taxicab ride to Kellogg without paying the fare therefor, although the evidence is to the effect he said he would pay when they reached Kellogg. He carried out no threat to kill Woods, although he could have done so. He did not shoot Woods or shoot at him, and did not try to harm him in any way. He did nothing when Woods did not drive toward Kellogg.

Upon another trial the question of assault in the first degree should not be submitted to the jury, and defendant's cross-examination touching a prior conviction should stop when he has admitted same. State v. Coloff, 152, Mont. 31, 231 Pac. (2d) 343.

For the reasons stated the judgment is reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICE BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN: (dissenting).

Defendant was charged with the crime of assault with a loaded firearm. The jury found him guilty of assault in the

first degree and left his punishment to be fixed by the court. The court instructed the jury on first and second-degree assault, but refused defendant's request for an instruction on third degree. This refusal is assigned as error.

This court has held that where the evidence shows that defendant is guilty of second degree assault or not guilty at all, and where there is no evidence warranting an instruction on third degree assault, it is error to give an instruction on third degree. State v. Karri, 84 Mont. 130, 276 Pac. 427.

In 6 C. J. S., Assault and Battery, sec. 128, p. 1006, it is said: "On the other hand, where the evidence discloses that accused was either guilty of a more serious offense, or was not guilty at all, the court is not only justified in failing or refusing to give an instruction as to the lesser offense but in such case it also seems that an instruction as to a lower degree of the offense, where accused is acquitted of the higher offense charged and convicted of the lower, is ground for reversal." To the same effect is 53 Am. Jur., Trial, sec. 798, p. 591.

Here the evidence shows that defendant pointed a loaded firearm at George Paul Woods, the driver of a taxicab, while sitting beside the driver. As he did so he told Mr. Woods to take him to Kellogg, Idaho. When Woods inquired about the fare, defendant, as he pointed the gun at him said: "Here's your fare. * * * Start driving." Woods testified: "He told me to start driving or he would kill me right there." Woods was put in fear of impending injury. These are the elements of an assault in the first or second degree. State v. Papp, 51 Mont. 405, 153 Pac. 279. The intent to commit a felony upon the person of George Paul Woods is shown by the proof that defendant pointed a loaded firearm at him and put him in fear of grievous bodily injury or death with a threat to kill him. State v. Farnham, 35 Mont. 375, 89 Pac. 728. The fact that the threat was not carried out is of no importance. Had it been carried out defendant would have been tried for murder and not assault. Likewise the intent to commit a felony upon the person of George Paul Woods was shown by the proof that

defendant attempted to obtain the use of the automobile then in the custody and control of Mr. Woods, without the latter's consent, for a free ride to Kellogg, Idaho, contrary to section 94-3305, R. C. M. 1947.

True, this intent was not carried out, but sufficient acts were done to constitute an attempt to commit that crime and this is likewise a felony under the statute. R. C. M. 1947, sec. 94-4710. To hold that the intent to commit a felony upon Woods was not proved in this case is to encourage those who are so disposed to compel action by another at the point of a loaded gun. I think my associates are in error in so holding.

If there was no proof of intent to commit a felony upon the person of George Paul Woods, as the majority opinion holds, then the crime was that of assault in the second degree, R. C. M. 1947, sec. 94-602, and the error was that of instructing on first-degree assault and not on the failure to instruct on third degree.

It should be noted that assault in the second degree is not limited to subdivision 5 of section 94-602, R. C. M. 1947. As to subdivision 4 that section provides: ''Every person who, under circumstances not amounting to the offense specified in the last section: * * *

''4. Wilfully and wrongfully assaults another by the use of a weapon, or other instrument or thing likely to produce grievous bodily harm * * * is guilty of an assault in the second degree''.

Since a loaded firearm was used the assault was of the first or second degree or there was no assault at all. There was no evidence of an assault in the third degree.

Defendant's version of the affair was that he had taken a dose of benzedrex with some hot beef tea and that he had no recollection of what happened after that. He said, ''It seems like the petcocks were open,'' and ''I thought the whole town had torn loose.'' Had defendant's version been believed it would not have reduced the degree of the offense to third degree but would have entitled him to an acquittal. The jury evidently

rejected his story as it had a right to do. State v. Willette, 46 Mont. 326, 127 Pac. 1013; State v. Grimsley, 96 Mont. 327, 30 Pac. (2d) 85; State v. Semmens, 105 Mont. 113, 71 Pac. (2d) 913.

I think the court was right in refusing to give an instruction on third degree assault.

On the question of proof of the prior conviction I also disagree with the majority opinion.

Defendant was asked if he had been convicted of a felony and he said, "yes." He was then asked, "What was the charge?". His answer was, "Forgery." That was the only reference to the former conviction. I think this was entirely proper under the authorities cited in my dissenting opinion in State v. Coloff, 125 Mont. 31, 231 Pac. (2d) 343. In this case the judgment of prior conviction was not introduced in evidence as in the Coloff Case and the majority opinion in this case goes much further in restricting the state's right of cross-examination of defendant for the purpose of impeachment than does the majority opinion in the Coloff Case, and further than the law requires. It should be noted too that no objection was made to the questions relating to the prior conviction.

I also disagree with the majority opinion so far as it holds that error was committed in refusing to give defendant's offered instruction No. 3.

That offered instruction was to the effect that a person is incapable of committing a crime when he is not conscious thereof. As above noted, defendant submitted proof that he had taken a dose of benzedrex which in effect caused a blackout. Other evidence submitted in behalf of defendant was to the effect that the drug is used as a stimulant and that the quantity of benzedrex which defendant says he took would lead to "mental confusion, hallucination, delirium and slurred speech. At one stage there would be a condition of euphrasia, a general good feeling." There was evidence that a person would probably not act normally with such a large dose. The record discloses

other information and appeared normal except that he had a
that when defendant was arrested he gave his name, age and
few drinks. Witnesses for the state testified that defendant was
not ''drunk.''

The offered instruction was in conformity with R. C. M. 1947, sec. 94-201, subd. 5, which in declaring that among those incapable of committing crimes are: ''Persons who committed the act charged without being conscious thereof.''

The court, however, gave an instruction on the effect of intoxication in conformity with R. C. M. 1947, sec. 94-119, as follows: ''You are further instructed that no act committed by a person while in a state of voluntary intoxication is less criminal by his being in said condition. But, whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act.''

I think the court did not err in refusing the offered instruction.

The evidence tends to show that benzedrex when taken in sufficiently large quantity produces the same effect as intoxication.

The case is comparable to that of People v. Sameniego, 118 Cal. App. 165, 4 Pac. (2d) 809, 812, 5 Pac. (2d) 653. In that case a requested instruction in conformity with subdivision 5 of section 26 of the California Penal Code, which is the same as R. C. M. 1947, sec. 94-201, subd. 5, was refused. In that case defendant said he had taken a drug called dial ciba which he contended rendered him unconscious. The court in holding that the trial court was right in refusing the offered instruction, in part, said: ''Appellants in their testimony denied that either of them used narcotics, but said that they had used a drug named dial ciba, the effect of which was the 'same thing as whiskey,' Mossberg adding, 'It goes further than that; it deadens one's conscience.' This testimony shows that the con-

dition produced by this drug, if any was used, was that of intoxication, and since the taking of this intoxicating drug was voluntary the law applicable to an act committed while under its influence is not subdivision 5 of section 26 of the Penal Code but section 22 of that code, which provides that no act is less criminal by reason of the perpetrator having been in a state of voluntary intoxication, but that evidence of intoxication may be considered by the jury in determining the purpose, motive or intent with which he committed the act. Section 22 is not limited to intoxication resulting from the use of intoxicating liquor, but includes all forms of voluntary intoxication.''

To the same effect is 22 C. J. S., Criminal Law, sec. 65, p. 130.

The Supreme Court of Pennsylvania in Commonwealth v. Detweiler, 229 Pa. 304, 78 A. 271, 272, where defendant claimed that his mind was a blank at the time of the commission of the alleged crime due to smoking opium, had this to say: ''Intoxication from the voluntary excessive use of opium or any other drug taken to gratify the appetite is considered in the law the same as intoxication from the voluntary use of liquors.''

As I have stated above the jury did not believe defendant's story about the blackout. The least it could have done if it believed that story was to reduce the degree of the crime to second-degree assault. Under the circumstances of this case defendant was not prejudiced by the refusal to give offered instruction No. 3 even if such an instruction should have been given, because it is clear that the jury rejected the evidence tending to support the claim that defendant was not conscious of committing the act charged, and such an instruction would not have changed the result in the case.

I think the judgment should be affirmed.

MR. JUSTICE METCALF: (dissenting).

The judgment should be affirmed.

The jury was properly instructed and it was not error to not have changed the result in the case.

As to the proof of a prior conviction, I believe the statute gives the county attorney the option of impeaching a witness, or the defendant if he is a witness in his own behalf, by asking him if he has ever been convicted of a felony, or by "the record of the judgment". R. C. M. 1947, sec. 93-1901-11. State v. Coloff, 125 Mont. 31, 231 Pac. (2d) 343, held that if the county attorney initially chose to impeach by examination of the witness, then he could not introduce the judgment. But the case at bar further restricts the statute so that for all practical purposes the county attorney is limited to impeachment by examination and cannot introduce the judgment. I also believe that it is proper to permit the jury to know of what crime the witness was convicted.