THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.*
WALTER THOMAS COOPER, DEFENDANT AND APPELLANT.

No. 12052.
Submitted August 30, 1971.
Decided September 28, 1971.
489 P.2d 99.

MR. CHIEF JUSTICE JAMES T. HARRISON did not participate in opinion.

Harrison, Loendorf & Poston, Helena, Jerome T. Loendorf argued, Helena, for defendant and appellant.

Robert L. Woodahl, Atty. Gen., Helena, David V. Gliko, Asst. Atty. Gen., argued, Helena, James A. McCann, County Atty., Wolf Point, for plaintiff and respondent.

MR. JUSTICE JOHN C. HARRISON, delivered the Opinion of the Court.

Defendant, Walter Thomas Cooper, was convicted of the crime of assault in the first degree in the district court of the fifteenth judicial district, county of Roosevelt. A post-conviction hearing was held for sentencing after notice was given under section 95-1506, R.C.M.1947. Defendant was sentenced to a term of thirty years in the Montana state prison. From this conviction defendant appeals.

Defendant, a 63 year old ranch hand, was charged with the crime of assault with a loaded firearm, a 30-30 bolt action rifle. The evidence reveals that defendant pointed the loaded rifle at Harold N. Grinolds, the sheriff of Richland County. Sheriff Grinolds on the day of the assault, April 12, 1970, was looking for the driver of an abandoned vehicle and had stopped at a ranch near Culbertson to inquire about the man he was looking for. Defendant Cooper was at the ranch and

exchanged greetings with the sheriff, but the conversation the sheriff had at that time was with the defendant's employer. After this conversation the sheriff proceeded to Culbertson where he searched the local bars in an effort to locate the missing driver.

Upon entering the Montana Bar he encountered defendant who was leaving with a six pack of beer. The sheriff testified that defendant inquired "aren't you a little bit out of your jurisdiction?" and followed that by saying "* * * the next time around that he was going to kill me." Defendant then cursed the sheriff and as he went out the door of the saloon he called back to the sheriff "You * * *, I will kill you."

After making inquiries of persons in the bar as to the person he was seeking, the sheriff left the Montana Bar, went to another bar to make the same inquiries, and then started for his car. As he approached his car he saw a pickup come down the street and pull up in back of his car. The driver of the pickup was the defendant Cooper who got out of his pickup with a rifle. As the sheriff reached the driver's side of his car defendant met him and pointed the rifle at the sheriff's stomach. The sheriff testified that defendant "told me that he was going to shoot me".

Fortunately at this time an ex-policeman of Culbertson, Alex Damm, appeared on the scene and seeing the sheriff's predicament he asked the defendant what he was doing, to which defendant answered, according to Alex Damm's testimony: "* * * He told me to leave him alone, he says, or I will blow your insides out too. I told him, that he wouldn't blow anybody's insides out, that is what I told him, and I told him that I didn't have to have a badge to take that gun away from you, and we talked back and forth, and Harold never said a word."

At about this time Mr. Pete Mock drove up in a pickup and parked it across the street from Cooper, Damm and the defendant. Observing what was happening, he walked towards the

three men stopping about eight feet from them. He began talking to the defendant and slowly moved into a position where he hit the gun upwards and disarmed defendant. After disarming defendant, Damm, Mock and Sheriff Grinolds took the rifle into a nearby bar to examine it. They found a cartridge in the chamber and cartridges in the clip. No one testified as to whether the safety was on or off. Defendant was allowed to leave the scene, but was arrested later by a highway patrolman and a local policeman after Sheriff Grinolds had signed a complaint and a warrant had been issued.

Prior to the Culbertson incident, the evidence indicated Sheriff Grinolds and the defendant had had previous encounters. On one occasion after cursing the sheriff, defendant was told "to be quiet or he would get a big fat lip"; when asked what happened then, defendant said "I got a big fat lip." There were other occasions testified to, covering a period of five years, where the defendant had in anger threatened the sheriff, but no physical entanglement had occurred.

Following the verdict of guilty the county attorney moved and was granted permission to file under section 94-4713, R.C.M.1947, an Information charging the defendant with a prior conviction. A copy was given to the defendant along with a report from the FBI giving a brief history of the prior conviction. The trial judge took the matter under advisement and a post-conviction hearing was set for December 15, 1970, two weeks after the jury trial.

At the post-conviction hearing Judge Sorte denied a motion for a new trial and took under consideration exhibit "D" presented to the court. Four other exhibits were offered, objected to by the defense, and the objections sustained by the trial judge. Exhibit "D" was a certified copy of a conviction of "Accessory, A Felony," dated November 15, 1967, sentencing W. T. Cooper to two years in the state prison. Judge Sorte in admitting exhibit "D" said:

"* * * in interpreting section 94-4713, the question of

whether or not it was a felony, this is a certified copy of a conviction of Accessory, a felony, and although the specific crime is not indicated, it does sentence the Defendant to two years in Deer Lodge and the Court will take notice of that in that it was a felony and will admit the Exhibit."

At the time he pronounced sentence, Judge Sorte had before him for consideration exhibit "D" and a presentence report made by his parole officer. This report gave the defendant's name, his FBI #114 921 F (which is the same number as appears on his "rap" sheet), and under criminal history of that report the following appears:

"(a) Subject admits to the following:

"1. A second degree assault charge in Quincy, California.

"2. A grand larceny accessory charge in Sidney, Montana in 1967."

On the basis of these reports Judge Sorte sentenced defendant to thirty years at hard labor in the Montana state prison.

Defendant raises two issues on appeal:

1. Whether the evidence of a prior conviction was improperly admitted and considered by the trial court in sentencing the defendant.

2. Whether there was sufficient evidence to support the verdict.

This is the initial opinion of this Court in the interpretation of section 95-1506, R.C.M.1947, as to what is required in presenting and proving prior criminal offenses.

In 1967 the legislative assembly passed a new code of criminal procedure, Title 95, R.C.M.1947. The purpose of this new code is set forth in section 95-102, R.C.M.1947, and reads:

*"Purpose and construction.* These provisions are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and elimination of unjustifiable expense and delay."

Section 95-1506, R.C.M.1947, reads as follows:

"*Prior conviction.* When the state seeks increased punishment of the accused as a prior convicted felon under section 94-4713, notice of that fact must be given in writing to the accused or his attorney before the entry of a plea of guilty by the accused, or before the case is called for trial upon a plea of not guilty. Such notice must conform to the following provisions:

(a) The notice must specify the prior convictions alleged to have been incurred by the accused.

(b) The notice and the charges of prior convictions contained therein shall not be made public nor in any manner be made known to the jury before the jury's verdict is returned upon the felony charge provided that if the defendant shall testify in his own behalf he shall nevertheless be subject to impeachment as provided in section 93-1901-11, R.C.M.1947, as amended.

(c) If the accused is convicted upon the felony charge, the notice, together with proper proof of timely service, shall be filed with the court before the time fixed for sentence. The court shall then fix a time for hearing with at least three (3) days' notice to the accused.

(d) The hearing shall be held before the court alone. If the court finds any of the allegations of prior conviction true, the accused shall be sentenced under the provisions of section 94-4713."

In addition to section 95-1506, certain other sections were enacted in Chapter 22, Title 95, R.C.M.1947, to guide the trial court during the sentence and judgment stage of the proceedings. They are:

"95-2203. *Presentence investigations.* No defendant convicted of a crime which may result in commitment for one (1) year or more in the state prison, shall be sentenced or otherwise disposed of before a written report of investigation by a pro-

bation officer is presented to and considered by the court, unless the court deems such report unnecessary. The court may, in its discretion, order a presentence investigation for a defendant convicted of any lesser crime or offense."

"95-2204. *Content of investigation.* Whenever an investigation is required, the probation officer shall promptly inquire into the characteristics, circumstances, needs, and potentialities of the defendant; his criminal record and social history; the circumstances of the offense; the time the defendant has been in detention; and the harm to the victim, his immediate family, and the community. All local and state mental and correctional institutions, courts, and police agencies shall furnish the probation officer on request the defendant's criminal record and other relevant information. The investigation shall include a physical and mental examination of the defendant when it is desirable in the opinion of the court."

"95-2205. *Availability of the report to defendant and others.* The judge may, in his discretion, make the investigation report or parts of it available to the defendants or others, while concealing the identity of persons who provided confidential information. If the court discloses the identity of persons who provided information, the judge may, in his discretion, allow the defendant to crossexamine those who rendered information. Such reports shall be part of the record but shall be sealed and opened only on order of the court.

"If a defendant is committed to a state institution the investigation report shall be sent to the institution at the time of commitment."

Here, defendant's objection concerns the proof necessary to prove a prior conviction and his issue goes to the admission of exhibit "D"—the certified copy of the prior offense. In raising the issue he relies on former rulings of this Court in the cases of State v. Livermore, 59 Mont. 362, 196 P. 977 and State v. Nelson, 130 Mont. 466, 304 P.2d 1110. These cases held that the fact of a prior conviction must be proved beyond

a reasonable doubt and the mere showing that the defendant's name is similar to the name of the person on the charge sheet is not sufficient.

Under the old procedure act covering these cases it was the jury's duty to determine the truth of the prior conviction and the prior conviction appeared as a part of the Information. As noted heretofore Title 95, R.C.M.1947, changed this procedure. Under the present law the prior conviction does not appear as a part of the Information; the jury does not consider the defendant's past criminal record; and it is left to the trial judge, at a post-conviction hearing, to determine whether or not the defendant is the same person as the person appearing on the charge of prior offenses. *Livermore* and *Nelson* are no longer controlling as to the proving of prior convictions at the post-conviction stage. Under the new criminal procedure that determination is made with carefully prescribed protections for the defendant.

However, the mere showing that the defendant's name is similar to the name of the person on the charge sheet is not sufficient. There must be proof, competent proof, that the defendant is the same person as the one whose name appears as having been previously convicted as alleged in the notice provided in section 95-1506, R.C.M.1947.

We recognize here that trial counsel, not the same counsel as on appeal, made no objection on the grounds of identity. Perhaps, had he done so, the problem would have been clarified. But here, we do not have competent evidence in the record that defendant is the identical person convicted of a felony as specified in the notice. This has nothing to do with the validity of the conviction, but only as to the sentence. We remand the case to the district court for further proof of positive identification and resentencing.

The second issue for review goes to the sufficiency of the evidence to convict on a first degree assault charge.

The Information charged defendant "orally threatened to

kill Harold N. Grinolds in a public place in the town of Culbertson and did immediately thereafter assault Harold N. Grinolds with a loaded fire arm, to-wit: a 30-30 bolt action rifle, fully loaded, cocked and ready for discharge, at point blank range, and with intent in him the said defendant, to kill Harold N. Grinolds * * *".

In each first degree assault case appealed to this Court, we are faced with the sufficiency of the proof of "intent to kill a human being." Section 94-601, R.C.M.1947.

In State v. Madden, 128 Mont. 408, 416, 276 P.2d 974, 978, a definitive rule was set down regarding proof of "criminal intent." There we said:

"The element of felonious intent in every contested criminal case must necessarily be determined from facts and circumstances of the particular case, —this for the reason that criminal intent, being a state of mind, is rarely susceptible of direct or positive proof and therefore must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence. * * *

" 'The question of intent is a question for the jury.'

*    *    *    *    *    *    *

" 'It is sufficient if at the instant of the assault he intended to kill the party assaulted. It is sufficient if he is actuated in making the assault by that wanton and reckless disregard of human life that denotes malice and the assault is made under such circumstances that if death had ensued the killing would have been murder.' "

Later on in *Madden* this Court denoted its rule in reviewing a verdict as follows:

"The question of defendant's guilt or innocence was for the jury and, the verdict being sustained by substantial evidence, cannot be disturbed by this court under the facts and circumstances shown by the record herein. (Citing cases.)"

In State v. Cor, 144 Mont. 323, 327, 396 P.2d 86, 89, we further clarified this Court's duty on review by stating:

"The test is whether the facts and circumstances are of such a quality and quantity as to legally justify a jury in determining guilt beyond a reasonable doubt."

If ever there was a case where the jury had before it more proof than in the instant case, we cannot recall it. Not only had there been previous threats to kill the sheriff but here, within a very short time after such a threat, defendant obtained a loaded rifle, came back to where the sheriff was, parked his car in such a position as to block the sheriff's car thus preventing his departure, confronted the sheriff, pointed the gun at his stomach, cursed him and told him he was going to shoot him. But for the intervention of bystanders, defendant might well have been before this Court on appeal from a murder charge.

The jury heard the defendant's testimony and did not believe that he "was kidding." Defendant argues that under the ruling of this Court in State v. Quinlan, 126 Mont. 52, 244 P.2d 1058, he cannot be convicted of first degree assault for he did not carry out the "threat to kill," "although he could have done so."

The time has come to say farewell to the majority's holding in *Quinlan* and we overrule it. *Quinlan* has been no lighthouse in the field of criminal law, few courts have cited it, even as bad law, and the time has come to give it a decent burial. In doing so, we return to the mainstream of judicial holdings throughout this country which hold that in first degree assault cases intent is not to be measured by the secret motive of the actor or some undisclosed purpose merely to frighten, not to hurt. Intent is to be judged objectively.

The judgment of conviction of the trial court is affirmed, but the sentence is set aside, as previously set out in this opinion, and the defendant is returned to the trial court for resentencing.

MR. JUSTICES DALY, HASWELL and CASTLES, concur.

MR. CHIEF JUSTICE JAMES T. HARRISON, did not participate in this Opinion.