STATE, APPELLANT, v. BARRY, RESPONDENT.

(No. 3,146.)

(Submitted June 10, 1912.   Decided June 17, 1912.)

[124 Pac. 775.]

*Criminal Law—Assault in First Degree—Firearms—Putting in Fear—Evidence—Insufficiency.*

Criminal Law—Assault With Deadly Weapon—Definition.

1.  To constitute an assault by means of a rifle used as a firearm and pointing at the person claiming to have been assaulted, such person must have been put in fear of immediate bodily injury by the actual or apparent ability in the assailant to inflict harm, it being immaterial whether the gun was loaded or not.

Same—Evidence—Insufficiency.

2.  *Held,* where defendant leveled a rifle at three travelers, one of whom was the prosecuting witness, and commanded them to throw up their hands, that the latter, who was then so far behind his companions that he did not see defendant until after he had been rendered harmless, could not have been put in fear for his safety, and that therefore an assault upon him had not been committed.

*Appeal from District Court, Carbon County: Sydney Fox, Judge.*

G. W. BARRY was charged with assault in the first degree, and, from an order directing a verdict of not guilty, the state appeals. Affirmed, MR. JUSTICE SMITH dissenting.

Cause submitted on briefs of counsel.

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Appellant.

The general rule of law always has been that the pointing of a firearm at another constitutes an assault, and that, if the firearm was not loaded, or was harmless as such, it is a matter of defense to be introduced by the defendant.  (See *State* v. *Herron,* 12 Mont. 230, 33 Am. St. Rep. 576, 29 Pac. 819.)  In 3 Cyc. 1055, it is said: "Where the assault is alleged to have been committed with a firearm, the presumption is that the weapon was loaded and the burden of proving it to be unloaded is on the defendant."  (*Caldwell* v. *State,* 5 Tex. 18; *Burton* v. *State,* 3 Tex. App. 408, 30 Am. Rep. 146; *State* v. *Cherry,* 33 N.

C. 475; *Crow* v. *State,* 41 Tex. 468; see, also, *Lockland* v. *State,* 45 Tex. Cr. 87, 73 S. W. 1054.)

*Messrs. Nichols & Wilson,* and *Mr. A. C. Spencer,* for Respondent.

There is no evidence tending to show that the rifle was loaded, and no presumption can be indulged to that effect. We therefore submit that upon the record in this case it cannot be said or assumed that the rifle was "a loaded firearm"; neither can it be said or assumed that, as used by the defendant, it was a "deadly weapon," or a weapon of any character.. If the rifle was loaded, it was a "loaded firearm" and a "deadly weapon," as defined in section 8312, Revised Codes. If it was not loaded, it was not a deadly weapon as charged in the information, and the essential and vital element of the offense of first degree assault, as above defined, is wholly wanting. Therefore, to establish a *prima facie* case of first degree assault for the consideration of the jury, it was incumbent upon the state to submit some testimony at least tending to show that the rifle was loaded. In the absence of such testimony there is no evidence tending to show the commission of an assault in the second or third degree. (See *People* v. *Lee Kong,* 95 Cal. 666, 29 Am. St. Rep. 165, 17 L. R. A. 626, 30 Pac. 800; *State* v. *Napper,* 6 Nev. 113; *People* v. *Wells,* 145 Cal. 138, 78 Pac. 471; *Klein* v. *State,* 9 Ind. App. 365, 53 Am. St. Rep. 354, 36 N. E. 763; *Chapman* v. *State,* 78 Ala. 463, 56 Am. Rep. 42.)

On an indictment for an assault and battery, where the evidence showed that the respondent pointed an unloaded pistol at the prosecutor at the distance of six paces, and ordered the prosecutor to kneel down, which he did through fear, it was held that this did not constitute an assault. In order to constitute an assault, there must be an actual intent to do a physical injury. Where there is no ability to inflict injury, and this is known to the respondent, he cannot entertain the intent to do injury. Fear on the part of the prosecutor cannot constitute a threatening act an assault, when there is no intent or ability to do physical injury, even though such fear is reasonable

under the circumstances. (*McKay* v. *State*, 44 Tex. 43, 1 Am. Crim. Rep. 46; *State* v. *Godfrey*, 17 Or. 300, 11 Am. St. Rep. 830, 20 Pac. 625; *People* v. *Sylva*, 143 Cal. 62, 76 Pac. 814.)

Counsel for the state contend that the fact that the rifle was not loaded, if such be the fact, was matter of defense. We insist that it was not, until there was some evidence introduced tending to show that it was loaded. It is never incumbent upon the defendant to negative or rebut the allegations of the information until the state has offered proof in support of all those allegations which are material and necessary to define and establish the crime. The appellant virtually rests this appeal upon the case of *State* v. *Herron*, 12 Mont. 230, 33 Am. St. Rep. 576, 29 Pac. 819. That case involved a prosecution for attempted assault. The prosecution at bar does not involve an attempt. It may be that a *prima facie* case of attempted assault was made; or a case of disturbing the peace, or some similar offense. The defendant had the present ability to attempt an assault whether the rifle was loaded or not. Pulling the trigger of an empty rifle, believing it to be loaded and intending to shoot, would clearly constitute an attempted assault; the ability to make the attempt is present, but the ability to make the actual assault, *i. e.*, to inflict the injury, is wanting.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendant was charged with committing an assault in the first degree upon one J. Roy Huntington by means of a rifle, described as a deadly weapon. At the close of the case for the prosecution, the trial court directed a verdict of not guilty, and the state has appealed.

The only evidence offered by the state at the trial was furnished by the witness James Wasson, corroborated in part by Arthur Wasson, and the prosecuting witness, Huntington. James Wasson was the only witness who assumed to detail all the facts and circumstances. He testified that on July 18, 1911, he, Arthur Wasson, and Huntington were riding on horseback along a road, when the defendant stepped from behind some

bushes, leveled a rifle at them, and commanded them to hold up their hands. At the time Barry was sixty or seventy feet away. The witness immediately leveled his own gun at Barry, and Barry cried out, "For God's sake, don't shoot me, Jim! You're not the man I am after. It's that dirty s—— o—— b—— over there," pointing to Huntington. Other conversation was had, during which Barry used threatening and abusive language toward Huntington, but it is of no particular moment here. (Arthur Wasson did not see or hear all that occurred, or, if he did, he had forgotten part of it) However, he corroborated James Wasson as to the principal points covered by the latter's testimony. (Huntington, the prosecuting witness, did not see or hear a part of what transpired. He testified that his attention was first attracted by some exclamation from James Wasson, that he turned and saw Wasson with his gun leveled to the front, and, looking in that direction, saw Barry just as Barry begged Wasson not to shoot. From that point on he corroborates Wasson as to all material matters.)

The motion for a directed verdict made by the defendant was based upon the ground that since there was not any evidence tending to show that the gun which Barry had was loaded, or that he attempted to use it in any manner other than as a firearm, the evidence was insufficient to support a conviction for assault in any degree. This view was adopted by the trial court.

In every instance where an assault is charged to have been committed by means of a gun used as a firearm only, not as a club or bludgeon, and there is not any evidence as to whether the gun was loaded, a question arises upon which the courts are hopelessly divided. The difficulty arises in the attempt to distinguish between violence merely menaced and an assault. It is useless to attempt to reconcile the decisions, even upon substantially the same facts. Some courts hold that, in the absence of proof that the gun was loaded, no offense is made out because there is no showing of a present ability to inflict injury which it is insisted is an essential element of the crime. Others hold that there is a presumption to be indulged that the gun was loaded, and the burden is upon the defendant to overcome the

presumption by evidence that the gun was not loaded. . Typical of the first class of cases are *Klein* v. *State,* 9 Ind. App. 365, 53 Am. St. Rep. 354, 36 N. E. 763, and *Chapman* v. *State,* 78 Ala. 463, 56 Am. Rep. 42. A leading case of the second class is *Crow* v. *State,* 41 Tex. 468. . In *State* v. *Herron,* 12 Mont. 230, 33 Am. St. Rep. 576, 29 Pac. 819, this court adopted the doctrine of the Texas court. However, the *Herron Case* was one of an attempt to commit an assault and much that appears in the opinion is clearly *dictum.* The rule there announced would seem to be altogether at variance with the other rule, universally recognized, that it is incumbent upon the prosecution to prove every material allegation of the information beyond a reasonable [1] doubt. The more sensible rule, we think, and the one adopted by the later decisions and by text-writers, is founded upon the purpose which the statutes defining assaults have in view, *viz.,* to prevent breaches of the peace.

In Hochheimer's Criminal Law, section 254, the rule is stated as follows: ''Any attempt unlawfully to apply the least actual force to the person of another constitutes an assault. The attempt is made whenever there is any action or conduct reasonably tending to create the apprehension in another that the person engaged therein is about to apply such force to him. It is sufficient that there is an apparent intention to inflict a battery and an apparent ability to carry out such intention. It is the outward demonstration that constitutes the mischief which is punished as a breach of the peace. * * * If the offender presents a pistol within apparent range and threatens to shoot another, it is immaterial that the weapon is not in fact loaded, if the person threatened has reasonable cause to believe it loaded.''

In 1 Wharton's Criminal Law, tenth edition, section 606, the same rule is stated thus: ''An offer to strike by one person rushing upon another will be an assault, although the assailant be not near enough to reach his adversary, if the distance be such as to induce the latter, under the accompanying circumstances, to believe that he will instantly receive a blow, unless he strike in self-defense. And one reason for this is that an attack appar-

ently likely to hurt is as provocative of a breach of the peace as one actually capable of hurting. Hence, drawing a gun or other dangerous weapon on another with threat to use it is an assault, although the weapon is not pointed. Whether, when the weapon is not loaded, there is an assault has been doubted. But, as will be soon more fully seen, when the attitude is threatening, and the effect is to terrify, the offense is complete; the party assaulted believing in the reality of the attack. \* \* \* The true rule is that there must be some adaptation of the means to the end, and it is enough if this adaptation be apparent, so as to impress or alarm a person of ordinary reason." (See, also, Clark & Marshall on the Law of Crimes, secs. 201, 206; 1 McClain's Criminal Law, sec. 234.) Bishop defines an assault as "any unlawful physical force partly or fully put in motion creating a reasonable apprehension of immediate physical injury to a human being." (2 Bishop's New Criminal Law, 8th ed., sec. 23.) Again, the same author says: "There is no need for the party assailed to be put in actual peril, if only a well-founded apprehension is created; for his suffering is the same in the one case as in the other, and the breach of the peace is the same. To illustrate: If within shooting distance one menacingly points at another with a gun, apparently loaded, yet not in fact, he commits an assault the same as if it were loaded. There must be some power, actual or apparent, of doing bodily harm; but apparent power is sufficient. In the instances we are referring to, the person assaulted is really put in fear." (Section 32.) After stating the foregoing rules, the author enters upon an extended discussion of the subject with reference to the questions which have led to conflicting decisions. (See subdivision 3, sec. 32, above.)

In *Commonwealth* v. *White,* 110 Mass. 407, the defendant was charged with committing an assault upon one Harrington by the use of a gun. The trial court charged the jury "that an assault is any unlawful physical force partly or fully put in motion which creates a reasonable apprehension of immediate physical injury; and that if the defendant, within shooting distance, menacingly pointed at Harrington a gun, which Harrington had

reasonable cause to believe was loaded, and Harrington was actually put in fear of immediate bodily injury therefrom, and the circumstances of the case were such as ordinarily to induce such fear in the mind of a reasonable man, then an assault was committed, whether the gun was in fact loaded or not." This instruction was held to state the rule of law correctly, and with it we agree.

Applying the principle to the facts disclosed by the record, [2] and the correctness of the trial court's ruling is apparent at once. Not only is there an entire absence of evidence that Huntington was put in fear, but the contrary appears. He did not even see the defendant until after James Wasson had Barry covered with his gun and rendered completely harmless. Barry had neither the actual nor apparent ability to inflict harm upon Huntington, and, under the circumstances, with Barry *hors de combat*, it would seem impossible for any reasonable man in Huntington's position to affirm that he was then in fear for his safety. But, however this may be, the prosecuting witness does not even intimate that he was in fear. The circumstances would not be materially different if Huntington had been several hundred yards in the rear of James and Arthur Wasson and entirely ignorant of what was transpiring until after Barry had been disarmed. Under such circumstances, it seems impossible that it can be contended that an assault upon Huntington was committed. In *People* v. *Lilley*, 43 Mich. 521, 5 N. W. 982, it is said: "An assault may be made upon a person, even though he had no knowledge of the fact at the time." The statement is not amplified and at first blush appears to be a contradiction of terms, and is such in fact if the authorities quoted above correctly announce the rules applicable to cases of assault.

We have not been called upon to consider whether this defendant might have been convicted of an attempt to commit an assault or of any other crime.

The order of the district court is affirmed.          *Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SMITH: I cannot concur in the final disposition of this case. The question whether the defendant was guilty of an assault in the third degree should have been submitted to the jury. The authorities cited by MR. JUSTICE HOLLOWAY, as I read them, so hold. I do not think the apprehension of a battery is necessarily confined to the person toward whom the weapon is directed. "It is the outward demonstration that constitutes the mischief which is punished as a breach of the peace." Such apprehension may be excited in the breast of a third person, as was the case here. Any man is authorized to prevent a battery upon another, and if an assault is made by A upon B, who is ignorant of it, but under such circumstances as to excite apprehension, on the part of C, a bystander, that B is about to become the victim of a battery, it is the duty of C to interfere, and the offense on A's part is complete. It is not the peace of B that is disturbed, but that of the public.