UNITED STATES of America,
Appellee,

v.

Donald F. BRADLEY, Appellant.

No. 1039, Docket 71-1064.

United States Court of Appeals,
Second Circuit.

Argued July 14, 1971.

Decided July 23, 1971.

Certiorari Denied Nov. 9, 1971.
See 92 S.Ct. 303.

Oakes, Circuit Judge, concurred in result.

Peter A. Clark, Asst. U. S. Atty. (Stewart H. Jones, U. S. Atty., D. Conn., on the brief), for appellee.

Eugene N. Sosnoff, New Haven, Conn. (Sosnoff, Cooper & Whitney, and Louise G. Trubek, New Haven, Conn., on the brief), for appellant.

Before FRIENDLY, Chief Judge, and LUMBARD and OAKES, Circuit Judges.

LUMBARD, Circuit Judge:

Donald F. Bradley appeals his conviction on three counts of mail fraud in violation of 18 U.S.C. § 1341 after a jury trial in the District of Connecticut, Leonard P. Moore, *J.*, for devising a scheme to defraud by placing a false and misleading advertisement in the New York Times which led three persons each to mail him $75 to order certain historic medallions which Bradley represented were to be manufactured by Josiah Wedgwood & Sons of Staffordshire, England. Bradley was sentenced to concurrent prison terms of two years on each count.

Bradley claims error in three respects: (1) that the trial judge abused his discretion in failing to put certain questions to the jurors on the *voir dire*, as requested; (2) that it was error to admit Post Office Inspector Lyons' testimony about talks he had with Bradley prior to Bradley's indictment, since no warnings were given as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and (3) that the trial judge did not adequately charge the jury regarding good faith as a defense. We find no error and affirm the conviction.

There was overwhelming proof that Bradley's advertisement contained deliberate misrepresentations of fact and that he thereby fraudulently induced numerous persons to mail money to him for goods which he knew he could not procure and deliver. Commencing in 1965, Bradley procured orders from certain customers for medallions which he had manufactured through Josiah Wedgwood & Sons, Inc., New York, a subsidiary of the well-known English firm. By 1968, however, his finances were such that he was unable to pay Wedgwood for certain university medallions he had ordered. Contrary to an understanding with Wedgwood, New York, he billed customers and collected over $75,000 for goods which he never expressly ordered from Wedgwood. Because of Bradley's unpaid indebtedness, Wedgwood notified him in April 1969 that his account had been turned over to Dun & Bradstreet for collection and that Wedgwood was cooperating with Bradley's customers who were claiming fraud. Bradley's attempt to deal directly with Wedgwood in England was rebuffed. About this time, Bradley moved to New Haven and began to operate under the name of Wedgwood Mint, having previously used the name Bradwood Limited.

Following severance of relations with Bradley in April 1969, Wedgwood-New York referred complaints from Bradley's customers to the postal inspectors in New Haven. Meanwhile, Post Office Inspector Lyons had already written to Bradley about other complaints, and in the latter part of March 1969, when Bradley did not respond, he had gone to see Bradley at the New Haven YMCA where Bradley was living. Lyons furnished Bradley with copies of the complaints and arranged that he would forward any others to Bradley who would send Lyons copies of his responses. Bradley later voluntarily went to Lyons' office in New Haven on two or three occasions. On June 18, 1969, Bradley went to the office of the United States Attorney in New Haven where Lyons told Bradley that Wedgwood disclaimed any connection with him and was cooperating regarding undelivered medallions on which Bradley had collected money. At the suggestion of the Assistant United States Attorney, Lyons advised Bradley of his rights at this time and as a result Bradley did not make any oral or written statement.

Undaunted, Bradley again wrote Wedgwood-England seeking to deal directly with it, but he was advised that he must deal through Wedgwood-New York. Despite these rebuffs and warnings, Bradley then placed an advertisement, which appeared in the New York Times of August 10, 1969, soliciting money for medallions to be produced

by Wedgwood-England exclusively for Wedgwood Mint (Bradley). Of course, no such medallions had been ordered; and indeed, no such orders would have been accepted. Three customers named in the three counts of the indictment did submit orders and forward money to Bradley.

At trial, Bradley conceded virtually all of the facts recited above, except that he knew prior to his arrest in late 1969 that Wedgwood had expressly cut him off and had decided not to do further business with him. When asked on cross-examination whether Lyons had told him on June 18 that Wedgwood had severed relations with him, he stated that he did not remember. Bradley testified that the purpose of the New York Times advertisement was to secure money to repay the deficits of Bradwood Limited and Wedgwood Mint and that all the money he received he put back into his business.

■ The trial judge was under no duty to put to the jury panel the lengthy complicated questions submitted to test whether any of them were biased against persons who received money for goods and then failed to deliver. It was enough to inquire, as the judge did, whether any veniremen had been "involved in a criminal lawsuit or whether any of you have been defrauded by answering newspaper ads." Prior to this the panel had been sufficiently advised as to the nature of the case and the charges against Bradley. With an issue as simple as that which was before the jury in this case, it was necessary only to inquire whether any veniremen had suffered an experience of the nature for which the defendant was being tried, so that further questions might be put if any venireman made an affirmative answer. No such response was made.

■ Objection is made to the testimony of Inspector Lyons on the ground that, prior to talking to Bradley, he should have warned him of his rights according to the *Miranda* formula. The chronology of events and the substance of Lyons' testimony show the absurdity of this claim. The purpose of Lyons' visits was to advise Bradley of the complaints made against him and, in the last interview in June 1969, to make sure that Bradley understood that Wedgwood disclaimed any connection with him and was forwarding complaints from Bradley's customers. Lyons' testimony was relevant to Bradley's good faith as it showed that Bradley knew that there was no basis for any representation that he could hope to deliver Wedgwood products.

In any event, Bradley was free to talk with Lyons, or not, as he chose. There is no basis whatever for any assertion that Bradley was coerced. He went to the United States Attorney's office of his own free will. His talk there and his previous conversations with Lyons had none of the trappings of custody about them. See United States v. Viviano, 437 F.2d 295, 300–301 (2 Cir. 1971), and the cases cited therein. Indeed he was not charged with any offense committed prior to those talks; he was charged only because of what he caused to be done later, on August 10, 1969, through the newspaper advertisement and the acceptance of monies which followed. Lyons was trying to get Bradley to mend his ways; he was not seeking to get admissions to be used against him. The notice given to Bradley became relevant only because of what Bradley himself chose to do thereafter in disregard of Lyons' clear warning.

■ The appellant now claims that the Post Office Department has a rule imposing a duty on post office inspectors to give *Miranda* warnings when talking to anyone whose conduct they are investigating. But the record is completely barren of any proof that the Post Office Department has any such practice or regulation, and the point thus is not properly before us. Bradley's counsel cites a footnote from a student note in the Chicago Law Review as support for the existence of such a Post Office rule. Comment, Constitutional

Right to Counsel in Tax Investigations, 33 U.Chi.L.Rev. 134, 144 n. 47 (1965). But we cannot accept that reference as a substitute for what counsel should have done before trial or, at the very latest, on cross-examination of Lyons—to develop factual substantiation for his claim at a time when the government could have met the issue and the court could have ruled on it, i. e., before the trial was concluded. In any event, there is no basis for supposing that any conceivable regulation regarding a warning would have applied to the Lyons-Bradley conversations testified to by Lyons and freely admitted by Bradley.

  

■ Bradley's final point complains of the trial judge's instructions on good faith. We find no error. Judge Moore made it crystal clear that good faith was a complete defense in a detailed instruction which several times emphasized that this was the crux of the case.

Affirmed.

OAKES, Circuit Judge (concurring): I concur in the result.