No. 14639

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JOHN ADOLPH MARTINEZ,

Defendant and Appellant.

Appeal from:  District Court of the Eighth Judicial District,
              In and For the County of Cascade,
              Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

    For Appellant:

        Daniel Donovan argued, Legal Services, Great Falls,
        Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Richard Larson argued, Assistant Attorney General,
        Helena, Montana
        J. Fred Bourdeau, County Attorney, Great Falls Montana

Submitted:  March 24, 1980

Decided:  JUN 13 1980

Filed:  JUN 13 1980

Thomas J. Kearney
                                        Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

John Adolph Martinez, defendant and appellant, was convicted of felony theft by jury verdict in the Cascade County District Court. This appeal attacks the judgment of conviction on the following grounds: (1) insufficiency of the evidence; (2) the impropriety of allowing several prejudicial hearsay statements over objection; (3) the denial of a fair trial and adequate assistance of counsel because of the court's restrictions on defendant's opening statement, and (4) the giving of a jury instruction commonly known as the "Sandstrom instruction."

On May 30, 1978, defendant Martinez removed several components of stereo equipment owned by Scott Polotto from a residence occupied by defendant and Ray Lenz in Great Falls, Montana. Martinez transported the equipment to his mother's address in Great Falls and contacted Joyce Lange. He told Ms. Lange that he wanted to sell the equipment so he could get out of town and that it was not stolen. Ms. Lange agreed to purchase the equipment. She picked it up at Martinez' mother's house. On her way home Ms. Lange was stopped and questioned by two police officers about the equipment. She told them that she had purchased the equipment from the defendant.

Scott Polotto, the owner of the stereo equipment, was in the Cascade County jail when it was taken. His bail had been set at $50,000. After informing Polotto that his stereo had been taken, the police officers asked him several questions. In response to a question, Mr. Polotto informed the police that he had not given anyone permission to take the equipment. Scott Polotto later said that he understood that the defendant's purpose was to raise his bail.

At trial defense counsel, after objection by the prosecutor, was twice stopped during his opening statement. He was

attempting to discuss the elements of the crime, the burden of proof, and the presumption of innocence. The prosecution's objections were sustained on the basis that defense counsel was arguing the case which is improper in the opening statement. The transcript reveals the following narrative with respect to defense counsel's opening statement.

"MR. LANG: Thank you. Ladies and gentlemen of the jury. At this time the defendant, through myself as his counsel, is permitted to make an opening statement also to the jury panel, and members. The State of Montana has filed an information in this case, by which they have charged the defendant, Mr. Martinez, with the crime of felony theft. Now, I discussed with you on the voir dire examination about some of the underlying principles of the law, and about the presumption of innocence, and the burden of proof, and proof beyond a reasonable doubt, and I would just like to go over those again with you again at the present time---

"MR. BROWNING: If your honor please, we object to this on the ground that counsel is now arguing the case before the jury, instead of telling the jury what he intends to prove in his case. This is not an opening statement that counsel is now making to the members of the jury.

"THE COURT: The court will sustain the objection. The purpose of an opening statement is to give the jurors a preview of the evidence which will be presented, and not an argument.

"MR. LANG: Ladies and gentlemen of the jury, at this time the State of Montana has the obligation of proving each and every element of the offense charged in the information. Now, as you will recall, the judge had instructed you, just prior to your leaving for lunch, and the judge did recite the charge that the State has made against the defendant. Now, the State has the obligation of proving each and every element of the offense, and that was that Mr. Martinez did, purposely and knowingly---

"MR. BROWNING: We will again object, your honor, that counsel is arguing the case to the jury.

"MR. LANG: Your honor, at this time the State of Montana has indicated what they will prove, and I intend to show to the jury each of the items that they should look for, as the testimony progresses in the case, and that if any of those items should be missing, I would ask that the members of the jury be careful to note the fact that there is certain evidence which has not been presented, and which the State has to prove.

"THE COURT: Well, Mr. Lang, I think that would be for final argument. I think that counsel is misconstruing the purpose of an opening statement. Once again the purpose of an opening statement is to present to the jurors a preview of the evidence that is to be presented by the defendant. You, of course, will be given an opportunity in your final argument to argue the points that you are now raising. The objection is sustained.

"MR. LANG: Well, then, your honor, at this time, and because of the court's ruling, I have no opening statement to make and would object to the court's ruling.

"THE COURT: The record may so show.

"MR. LANG: I feel that a review of the charges, in light of---a review of the charges in a light that is viewed by the defendant would be in order for the jury, and I would request the opportunity to explore each and every one of these items and elements with the jury, in the light that is most favorable to the defendant.

"THE COURT: The court will sustain the objection and overrule the motion of defendant.

"MR. LANG: Ladies and gentlemen, I have merely a short statement to make to you. I would ask that you listen to the evidence carefully, and that you listen also to not only what you do hear, but also to what you do not hear, because it is the position of the defendant that the State of Montana cannot prove each and every element of this charge. Thank you."

During the course of the trial Scott Polotto testified that he had loaned the equipment to Ray Lenz, the defendant's roommate, and that he and Mr. Lenz had a reciprocal agreement to sell any of the other's property if the other needed to raise bail. He further testified that he had talked with two police officers, Detective Warrington and Detective Macek, when he was in jail, regarding his equipment and that he had never "directly" given Martinez permission to take the equipment. Upon cross-examination Polotto stated that he now understands that the defendant removed the equipment in an attempt to raise his bail and that knowing the details, he now authorizes the defendant's conduct. The last statements were admitted over the State's objection on the basis that Polotto's state of mind was in issue because

- 4 -

of the "unauthorized control" element of theft set forth in section 45-6-301, MCA. On redirect examination the prosecution questioned Polotto concerning a conversation with Detective Warrington, and he testified that he told Detective Warrington that he had given no one permission to take the stereo equipment.

After Scott Polotto testified, the State several times was allowed, over hearsay objections, to obtain testimony from two police officers concerning Polotto's statements to them. The State called Detective Warrington and questioned him concerning the conversation with Scott Polotto. Detective Warrington testified that he had asked Scott Polotto if he had given anyone permission to take the equipment. The State's question of "What was his [Polotto's] response" was objected to as hearsay. The objection was overruled after the Deputy County Attorney stated that the defense had put Polotto's state of mind in issue. The transcript indicates that the following testimony was admitted after the defense's objection:

> "MR. BROWNING: All right, then, what was the content of the conversation that you had with Scott Polotto, Detective Warrington? A. Well, Scott Polotto was very irritated that anybody would have been there, taking his stereo equipment. He stated that he did not give permission for anybody to remove his stereo equipment from that residence, where we had arrested him."

Following Detective Warrington's testimony, the State called Detective Macek, who was present at the time the conversation between Detective Warrington and Scott Polotto took place. Macek testified, without further objection, to the same conversation that Scott Polotto and Detective Warrington had already testified to.

The State rested its case after Detective Macek's testimony. The defendant then moved for a directed verdict "on the grounds that the testimony shows that the defendant, Mr. Martinez, did not exert unauthorized control over the alleged stolen stereo equipment, but, in fact, this control was subsequently ratified

by Mr. Polotto, and it is a well known rule of agency that a principal can subsequently ratify a contract which was originally unauthorized, and that such ratification relates back to the time of the contract, and renders such contract authorized."

The defendant's motion was denied and the District Court refused to give the following proposed instruction.

> "You are instructed that ratification is the adoption or affirmance by a person of a prior act which was done or professed to be done on his account. If one ratifies another's unauthorized act, on his behalf, the act is given effect as if originally authorized. It is equivalent to, or a substitute for, and has the effect of curing the absence of, original authority. Ratification relates back to the time when the act was done, and supplies original authority to do the act. Therefore, if you find that Scott Polotto, subsequent to May 30, 1978, ratified the acts of John Adolph Martinez, you must find that John Adolph Martinez did not obtain or exert unauthorized control over the stereo equipment, and you must find the defendant, Mr. Martinez, not guilty."

The following jury instruction was given by the court:

> "You are instructed that the law presumes that a person intends the ordinary consequences of his voluntary acts."

The defendant did not take the stand, and the only evidence in the record of his intent in taking the equipment were two contradictory statements; he told Ms. Lange he needed the money to get out of town, and Scott Polotto testified that Martinez' purpose was to raise his bail.

The jury found Martinez guilty of felony theft and he was sentenced to four years in the Montana State Prison.

The following issues have been raised on appeal:

1. Whether the District Court committed reversible error by giving a "Sandstrom instruction".

2. Sufficiency of the evidence to sustain the conviction.

3. Did the admission of hearsay constitute reversible error?

4. Did the District Court so restrict defendant's opening

statement that he was denied adequate assistance of counsel and a fair trial?

We note that defendant was convicted of felony theft under section 45-6-301, MCA, which provides in pertinent part:

"(1) A person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over property of the owner and:

"(a) has the purpose of depriving the owner of the property;

"(b) purposely or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or

"(c) uses, conceals, or abandons the property knowing such use, concealment, or abandonment probably will deprive the owner of the property.

" . . ."

This Court has stated in another felony theft case:

"'The element of felonious intent in every contested criminal case must necessarily be determined from facts and circumstances of the particular case--this for the reason that criminal intent, being a state of mind, is rarely susceptible of direct or positive proof and therefore must usually be inferred from the facts testified to by witnesses and circumstances as developed by the evidence . . .'

"'The question of intent is a question for the jury.'" State v. Farnes (1976), 171 Mont. 368, 372-373, 558 P.2d 472, 475.

The jury was given the following instruction on the element of intent:

"You are instructed that the law presumes that a person intends the ordinary consequences of his voluntary acts."

This is the same instruction that was declared to be an unconstitutional denial of due process in Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L Ed 2d 39. The basis of Sandstrom is that the instruction shifts the burden of proof on the element of intent and deprives the defendant of the presumption of innocence. However, the United States Supreme Court expressly left open the issue of whether or not the giving of this

- 7 -

instruction may be harmless error.

The State, in the present appeal, contends that this Court should not review this instruction because of defendant's failure to object. It is further contended that the "plain error" rule should not be invoked and even if it is, the error constitutes harmless error. We disagree.

Montana's "plain error" rule is contained in section 46-20-702, MCA, which provides:

> "46-20-702. Types of errors noticed on appeal. Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Defects affecting jurisdictional or constitutional rights may be noticed although they were not brought to the attention of the trial court." (Emphasis added.)

As determined in Sandstrom the instruction given is a defect affecting constitutional rights and we may review the issue under the "plain error" rule even though it was not brought to the attention of the trial court. However, under Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L Ed 2d 705, not all constitutional errors require reversal; the error may be harmless under the facts and circumstances of a case even though it is of constitutional magnitude.

This Court has been called to determine whether the giving of the Sandstrom instruction constitutes harmless error in several cases since Sandstrom. In these cases this Court has had to determine on a case-by-case basis whether the error was harmless within the guidelines that have evolved at the federal level in the cases of Fahy v. Connecticut (1963), 375 U.S. 85, 84 S.Ct. 229, 11 L Ed 2d 171; Chapman v. California, supra; Harrington v. California (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L Ed 2d 284; and Milton v. Wainwright (1972), 407 U.S. 371, 92 S.Ct. 2174, 33 L Ed 2d 1.

Our decisions reveal that in following the federal case law we must view all the evidence in determining whether the instruction

had an impact on the jury. In State v. Hamilton (1980), ____Mont. ____, 605 P.2d 1121, 1132, 37 St.Rep. 70, 82, we stated " . . . the appellate court determines the impact of the error upon a reasonable jury. If the impact of the instruction could not have reasonably contributed to the verdict, then the error is harmless." We found the Sandstrom instruction to be harmless error in Hamilton since the evidence of intent was overwhelming and in light of the facts, "the impact of the instruction upon the jury could not have reasonably contributed to the verdict." ____Mont. at____, 605 P.2d at 1133, 37 St.Rep. at 83. State v. McKenzie (1980), ____Mont.____, 608 P.2d 428, 37 St.Rep. 325, in following the rationale of Hamilton, also found harmless error in the giving of a Sandstrom instruction as a result of overwhelming evidence of intent.

This Court has found the giving of a Sandstrom instruction to be reversible error in the cases of State v. Sandstrom (1979), ____Mont.____, 603 P.2d 244, 36 St.Rep. 2099; State v. Wogamon (1980), ____Mont.____, ____P.2d____, 37 St.Rep. 840 and State v. Poncelet (1980), ____Mont.____, ____P.2d____, 37 St.Rep. 760. In each of these cases there was no overwhelming evidence of intent and this Court was unable to state that the error did not contribute to the verdict beyond a reasonable doubt.

In our present case, the evidence of intent is contradictory; Martinez told Ms. Lange he needed the money from the sale of the stereo to get out of town, and Scott Polotto testified that the purpose was to raise bail. On the basis of this evidence we cannot determine that the giving of a Sandstrom instruction did not contribute to the verdict. The element of intent was at least one of the principal issues at trial. Although the jury certainly could have found a felonious intent if properly instructed, there was no overwhelming evidence of defendant's intent. As a result, we conclude that the "plain error" rule is invoked because of the use of

a constitutionally defective jury instruction and that the error cannot be considered harmless. We reverse the conviction and remand the cause for a new trial. For the guidance of the District Court on retrial, we address the remaining issues which may recur at the second trial.

Defendant contends that sufficient evidence does not exist to establish the "unauthorized control" over Polotto's property or a "purpose of depriving" Polotto of his property which are essential elements of theft under section 45-6-301, MCA. The basis of this contention is Scott Polotto's testimony that once he understood Martinez' purpose was to raise bail he condoned the act thereby precluding a finding of either of these elements.

In addressing the test to be applied in issues involving the sufficiency of the evidence, it is well-established that questions of fact must be determined solely by the jury and that given a certain legal minimum of evidence, this Court will not substitute its judgment for that of the jury. In determining whether the verdict is supported by substantial evidence, we must examine the evidence in the light most favorable to the prevailing party. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Merseal (1975), 167 Mont. 412, 415-416, 538 P.2d 1366, 1367-1368; State v. Pendergrass (1978), ____Mont. ____, ____, 586 P.2d 691, 697-698, 36 St.Rep. 1512, 1520.

The testimony of Scott Polotto merely reveals that although he did not "directly" give Martinez permission he ratified the conduct after he learned that the purpose was to raise bail.

With regard to defendant's unauthorized control argument, it is clear that a victim cannot ratify a criminal act after the crime has been completed. See Davis v. Government of Canal Zone

(5th Cir. 1924), 299 F. 256; Hill v. State (1972), 253 Ark. 521, 487 S.W.2d 624. The testimony of Scott Polotto establishes that he condoned the act of the defendant only after he learned that Martinez had taken the equipment to raise bail. This testimony goes to the element of "purpose of depriving the owner of the property" instead of unauthorized control (consent). If defendant had the requisite mental state, that is a purpose to deprive, at the time the equipment was taken, it makes no difference that the victim later condones the act on a belief that the defendant did not have the intent to commit a crime. If the defendant had the intent to deprive Polotto of the stereo when it was taken, the crime was completed at that time and a subsequent ratification has no legal effect. If, on the other hand, the defendant did not have the requisite purpose he would be entitled to acquittal and the subsequent consent would be irrelevant. A purpose to deprive the owner of his property is a question for the jury to decide upon proper instruction. We find sufficient evidence to support a conviction as a result of Scott Polotto's and Joyce Lange's testimony.

The defendant also asserts on appeal that the District Court improperly admitted several prejudicial hearsay statements over objection. The hearsay statements of which he complains in this appeal all relate to Scott Polotto's statement that he had not given anyone permission to take his stereo equipment. Testimony concerning this statement was admitted into evidence when Scott Polotto was on the stand, and later when detectives Warrington and Macek testified.

Turning first to Scott Polotto's testimony, he testified on direct examination by the prosecution that "I didn't give him [Martinez] directly permission." On cross-examination he stated that he now authorizes the conduct. Then on redirect examination the following narrative, which is the basis of the defendant's

allegation of error with regard to this witness, occurred:

> "Q. [By Deputy County Attorney] And didn't you, in fact, tell Detective Dave Warrington---
>
> "MR. LANG [Defense counsel]: Your honor, I am going to object to this as hearsay.
>
> "THE COURT: Well, he didn't finish the question---
>
> "MR. BROWNING: Yes, I would like to finish my question, if the court please.
>
> "THE COURT: Overruled.
>
> "MR. BROWNING: Didn't you, in fact, tell Detective Dave Warrington that you were the owner of this stereo equipment, and that you did not give anyone permission to take the stereo equipment? A. Yes sir."

This testimony, when dissected, includes two statements which must be analyzed within the hearsay rules: "I, Scott Polotto, made a statement to the police officers that I had not made a statement to anyone authorizing them to take my stereo equipment." This testimony bears directly upon the element of "unauthorized control" and is offered "to prove the truth of the matter asserted" within Rule 801, Mont.R.Evid. The fact that he had not made a statement authorizing anyone to remove the equipment is admissible under the "state of mind" exception to the hearsay rule. Rule 803(3), Mont.R.Evid. The first part of this testimony, that he had told the police, is not hearsay by reason of Rule 801(d)(1), Mont.R.Evid., which provides:

> "(d) Statements which are not hearsay. A statement is not hearsay if:
>
> "(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, or (B) consistent with his testimony and is offered to rebut an express of implied charge against him of subsequent fabrication, improper influence or motive . . . ."

Thus, even if a proper objection had been made, the testimony would have been admissible. The statement, in this context, was not hearsay under Rule 801(d)(1), Mont.R.Evid. The statement

was inconsistent with his prior testimony on cross-examination that he now authorizes the conduct and is consistent with his original statement on direct examination that he did not directly give the defendant permission, and it was also offered to rebut the State's implied charge of subsequent fabrication, improper influence or motive.

Turning next to the testimony of the two police officers, the following took place when Detective Warrington was on the stand.

> "Q. [By Deputy County Attorney] And as a result of your call from dispatch, what did you do? A. Well, Detective Sergeant Macek and myself went to the jail holding facilities at the city police station to make transfers of the three people that we had to transfer to the county, and in doing so, I talked with Scott Polotto, and I asked him if he gave permission for anybody to remove his stereo equipment from their lodging, where we had made the arrest on him.
>
> "Q. What was his response? A. Negative---
>
> "MR. LANG: Objected to, your honor, as being hearsay."

The objection was overruled on the basis of the "state of mind" exception to the hearsay rule, and the prosecution was allowed to restate the question and receive a more detailed answer. First it must be pointed out that the objection appears from the transcript to be proper, since it seems that the police officer gave a very quick response and defense counsel cut off the answer as quickly as possible. See Hackenson v. City of Waterbury (1938), 124 Conn. 679, 2 A.2d 215; Wightman v. Campbell (1916), 217 N.Y. 479, 112 N.E. 184. In analyzing the content of this testimony Detective Warrington was actually saying "Scott Polotto told me that he had not told anyone that they were author-ized to take the stereo equipment." In this instance the declarant, Scott Polotto, was not on the stand; therefore, Rule 801(d)(1), does not apply, and we have "hearsay included within hearsay."

- 13 -

Rule 805, Mont.R.Evid., requires the exclusion of multiple hearsay unless "each part of a combined statement conforms with an exception to the hearsay rule. . ."

No exception to the hearsay rule applies to the first part of this combined statement; therefore, it is inadmissible. Scott Polotto had previously given the same testimony and, as the declarant, was subject to cross-examination concerning the statement. This safeguard of cross-examination, which is the essence of the hearsay rule, did not exist when Detective Warrington was on the stand.

Detective Macek's testimony was very similar to Detective Warrington's; however, a proper objection was not made. The District Court properly admitted Macek's testimony, since no objection was made.

The defendant also contends that he was denied a fair trial and the adequate assistance of counsel as a result of the District Court's restrictions on his opening statement. In reviewing the District Court's rulings on defense counsel's motion, we find no error. The proper function of an opening statement is to outline the defense and the evidence that the defendant intends to produce. It is improper to expound or argue legal theories or to attempt to instruct the jury as to the law of the case. 23A C.J.S. Criminal Law §1086; ABA Standards, The Defense Function §7.4 (Approved Draft, 1971). In this case the defense counsel was attempting to argue legal theories and instruct the jury. As a result, the restrictions were proper.

The judgment of conviction is vacated and the cause remanded to the District Court for a new trial.

_____
Chief Justice

We concur:

_____
_____
_____
_____
Justices