No. 80-69

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

CLIFFORD LaMERE,

Defendant and Appellant.

Appeal from:   District Court of the Eighth Judicial District,
In and For the County of Cascade.
Honorable John McCarvel, Judge presiding.

Counsel of Record:

For Appellant:

Sandra K. Watts argued, Great Falls, Montana

For Respondent:

Honorable Mike Greely, Attorney General, Helena, Montana
Sheri K. Sprigg argued, Assistant Attorney General,
Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana
Carroll Blend argued, Deputy County Attorney, Great Falls,
Great Falls, Montana

Submitted:   November 10, 1980

Decided:   DEC 17 1980

Filed:   DEC 17 1980

Thomas J. Kearney
                                        Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant Clifford LaMere appeals from a jury verdict finding him guilty of aggravated assault, in violation of section 45-5-202(1)(c), MCA.

On the afternoon of August 29, 1979, the manager of Albertson's grocery store in Great Falls noticed defendant removing numerous plastic bags from a roll in the store. The manager asked defendant to leave. Defendant left the store, but remained outside the store, looking in.

Shortly thereafter, the complaining witness, Chris Calkins, a new bagboy at the store, accidently bumped into defendant on his way back into the store. Defendant turned to him with a large knife and held it close to the bagboy's stomach, saying, "I'm going to kill that little s.o.b. and I'll kill you if you don't get that mother f----r." The victim brushed by the defendant and walked quickly into the store to get Kimble Wiley, "the littlest person" he could see. Talking rapidly, he told Wiley what had happened outside. One of the checkers in the store overheard the conversation between the victim and Wiley, and called the manager. The defendant was arrested later that day and charged with aggravated assault. He was convicted by a jury and the judge sentenced him to ten years in Montana State prison.

Defendant presents three issues to this Court.

(1) Did the State sustain its burden of proving aggravated assault, despite the fact that the victim did not testify to being in immediate fear?

(2) Did the district judge err by not allowing defense counsel to ask prospective jurors whether relatives or friends had ever been victims of an assault?

(3) Did the district judge's repeated interruptions of defense counsel so prejudice the rights of the defendant that he

- 2 -

is entitled to a new trial?

The defendant was charged under section 45-5-202(1)(c), MCA, which provides in part:

"A person commits the offense of aggravated assault if he purposely or knowingly causes:

" . . .

"(c) reasonable apprehension of serious bodily injury in another by use of a weapon . . ."

Defendant contends that the State did not show that the victim was placed in "reasonable apprehension," and therefore the State did not prove that element of the crime. The testimony of the victim shows that he was "shocked" at the time of the incident, but that he was not actually conscious of any fear until after he walked away from the defendant and realized what had happened. Defendant asks this Court to find that unless the victim testifies to an immediate fear of bodily injury that the defendant cannot be convicted under Montana law.

At the outset, we note that section 45-5-202(1)(c), MCA, makes no mention of the need to show that an immediate fear was aroused in the victim. But defendant calls this Court's attention to the early Montana case of State v. Barry (1912), 45 Mont. 598, 124 P. 775, in which this Court approved the charge to the jury:

"[A]n assault is any unlawful physical force partly or fully put in motion which creates a reasonable apprehension of immediate physical injury . . ." State v. Barry, supra, 45 Mont. at 603, 124 P. at 776-777.

"Immediate fear" was not at issue in that case. What was in question was whether defendant could be found guilty of assault when the victim did not even know that the defendant was pointing a gun at him. The court's finding that the victim was never in fear, and therefore that there could not be an assault, gave the court an opportunity to discuss the purpose of the assault statutes. The court noted that the legislative aim is to prevent breaches of the peace, for when a victim is put in a

- 3 -

position of knowing that he may receive a blow unless he strikes in self-defense, then the victim may be provoked into breaching the peace. State v. Barry, 45 Mont. at 602-3, 124 P. at 776. See also C. E. Torcia, Wharton's Criminal Law, §180 (14th ed. 1979).

The Barry court found that an unloaded gun, as well as a loaded gun, could be used to commit an assault because the offense is committed at the time that the

> "party assaulted believ[es] in the reality of the attack. . . The true rule is that there must be some adaptation of the means to the end, and it is enough if this adaptation be apparent, so as to impress or alarm a person of ordinary reason." State v. Barry, 45 Mont at 603, 124 P. at 776.

This Court does require the State to present evidence to show the victim's state of mind at the time of the alleged assault. Without such evidence, it is impossible for the jury to determine whether defendant's conduct placed the victim in reasonable fear or apprehension of serious bodily injury. See State v. Merseal (1975), 167 Mont. 412, 416, 538 P.2d 1366, 1368; State v. Sanders (1971), 158 Mont. 113, 117, 489 P.2d 371, 373.

But this Court has never held that a showing of immediate fear is the only way to prove "reasonable apprehension." We recognize that, as in civil assault, "apprehension is not the same thing as fear," W. Prosser, Law of Torts §10 (4th ed 1971), and we also recognize that a victim may be put in a position, such as the victim testified to here, of being so startled, or shocked, or afraid, that his reaction is a delayed one. The "reasonable apprehension" may be a response that the victim is not instantly aware of, but his actions may clearly show that he apprehends the reality of the attack. Here the victim testified that he brushed off the defendant and hurried back into the store, doing just as the defendant told him. Kimble Wiley testified that the victim came running up to him and that "he was talking a little rapidly. You know, trying to get it all out at

once, you know." The victim himself testified to the type of reaction that he had:

> "Q. That is what you told Miss Watts, is that right? A. That I wasn't scared at the time.
>
> "Q. Yes. A. Yes.
>
> "Q. What were you feeling at the time? A. I was just reacting, I wasn't feeling really nothing. Just that I reacted.
>
> "Q. After you did have a reaction, what reaction was that? A. That I could have got hurt or killed.
>
> "Q. Or killed? A. Yes.
>
> "Q. When did you have that reaction? A. Right after I left the person with the knife.
>
> "Q. And you went to warn Kimble? A. Yes."

On the basis of this evidence, we find that the judge correctly denied defendant's motion to dismiss, and properly submitted the case to the jury. From the testimony concerning the victim's nonverbal responses and the victim's own testimony concerning his reactions, the jury was able to make a determination that the victim was reasonably apprehensive of serious bodily injury. We will not overturn that finding because we find that it is supported by substantial evidence. State v. Merseal, supra, 167 Mont. at 415, 538 P.2d at 1368.

The appellant next contends that defendant's right to a fair trial may have been prejudiced by the exclusion of a particular line of questions during voir dire. Defense counsel asked the jurors, "Have any of you ever been a victim of a crime?" All jurors were permitted to answer the question and discuss it with counsel. Next, counsel asked, "Any of you ever had friends or relatives who have been the victim of an assault?" After two persons answered the question, the trial judge interrupted:

> "I will ask you now to -- some of these questions are general questions and are getting so broad that we could be here all day finding relatives or acquaintances of somebody who has been involved in criminal law. I will ask you now to confine your questions to the things that have to do with these particular jurors."

Counsel objected to this limitation, and abandoned the line of questioning. She now argues that this case might have gone to the jury with a sitting juror who had a close friend or relative who was the victim of an assault, perhaps making it impossible for that juror to be objective.

We find that the trial judge unnecessarily limited voir dire, but under the facts of this case, we do not find reversible error.

There are several overriding principles that must be taken into account in assessing the effect of the judge's refusal of questions during voir dire. The defendant is entitled to an impartial jury and the purpose of voir dire is to expose any possible biases. Haynes v. Missoula County (1973), 163 Mont. 270, 287-88, 517 P.2d 370, 380. In choosing an impartial jury, counsel must have wide latitude in questioning during voir dire. Yet the trial judge must also be able to set reasonable limits on voir dire. See Borkoski v. Yost (1979), ____Mont.____, 594 P.2d 688, 690, 36 St.Rep. 809, 812.

Several jurisdictions have considered the issue raised by appellant. Despite differing conclusions reached as to the extent of the questions that must be allowed, the courts considering the matter uniformly agree that the trial judge should minimally allow a question as to whether any prospective juror has been a victim of the crime charged. United States v. Bradley (2d Cir. 1971), 447 F.2d 224, 226; Commonwealth v. Davis (1978), ____ Pa.____, 400 A.2d 1320, 1321.

Many courts have found that it is also relevant to inquire into experiences of the jurors' immediate family members with respect to the crime charged. Beyond that limit, it is discretionary with the trial judge as to whether to allow questions about friends, relatives or crimes other than the one charged. United States v. Poole (3rd Cir. 1971), 450 F.2d 1082, 1083-1084.

We find this view to be persuasive. A person who has him-

self been a victim of the crime charged or who has experienced the crime through a family member's experience is likely to have very strong feelings toward a defendant accused of that crime, and any possible bias should be explored during voir dire. However, it is not necessary for the trial judge to allow questions as to friends and acquaintances. The trial judge did not abuse his discretion in restricting questions directed toward jurors' friends, but counsel should have been able to question about immediate family members as victims of an assault.

We note that counsel never posed a question directed only at the jurors themselves and their families, nor does counsel bring any evidence to this Court showing that defendant was prejudiced by the judge's restrictions. This Court will not presume prejudice. If it did exist, it is incumbent on defendant to bring the evidence of prejudice before us. Kuchan v. Harvey (1978), ____Mont.____, 585 P.2d 1298, 1301, 35 St.Rep. 1547, 1550. We find no reversible error in the judge's limitation.

Appellant next predicates error on the trial judge's interruptions during voir dire and his interruptions of her opening statement and closing argument. Counsel for appellant argues that the cumulative effect of this conduct may have been to make the jury look unfavorably upon the defendant, although she admits that the judge was not openly hostile or intentionally attempting to prejudice the defendant.

Judicial conduct of a trial can affect the substantive rights of a defendant. Annot., 62 ALR2d 166. But the court also has a duty to conduct the trial in a speedy and fair manner and has wide latitude in so doing. State v. Pippi (1921), 59 Mont. 116, 123, 195 P. 556, 558-59.

Among the interruptions of which defendant complains are several instances during voir dire. The record reveals that the trial judge interrupted both counsel several times, admonishing their use of "law school questions" with the jury. The other

- 7 -

instance was discussed above and involved the judge's limitation of what he felt to be an overly-broad question. Absent an abuse of discretion, which is not alleged here, the trial judge has great latitude in controlling voir dire. Borkoski, supra, ____ Mont.____, 594 P.2d at 690, 36 St.Rep. at 812.

The judge also interrupted defense counsel during her opening statement, warning her not to argue the case. Although a judge should not interrupt the opening, so as to prevent defendant from outlining his defense, the trial judge can stop counsel from giving instructions or arguing the case. State v. Martinez (1980), ____Mont.____, 613 P.2d 974, 982, 37 St.Rep. 982, 991. Here the judge properly interrupted counsel.

The last interruption occurred about 2:30 p.m. during closing arguments. The judge asked counsel if she would like to take the afternoon recess or continue to argue. This interruption may have broken the continuity of her argument, but it appears that the judge was only attempting to facilitate the trial.

Although the record reflects numerous interruptions of defendant's case, there is evidence to show that most of the interruptions were warranted. Counsel does not allege, and the record does not show, that the judge's conduct of the trial was meant to do anything but expedite and facilitate the trial. The defendant is not entitled to a new trial.

The conviction is affirmed.

_Frank I. Haswell_
--------------------------------
Chief Justice

We concur:

_Gene B. Daly_
--------------------------------
_John Conway Harrison_
--------------------------------

- 8 -

_Daniel J. Shea_

_John C. Sheehy_

Justices