

DA 10-0184

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 81

STATE OF MONTANA,

   Plaintiff and Appellee,

 v.

MICK GRANT,

   Defendant and Appellant.

APPEAL FROM:  District Court of the Twelfth Judicial District,
        In and For the County of Hill, Cause No. DC-09-121
        Honorable David G. Rice, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

      Joslyn Hunt, Chief Appellate Defender, Garrett R. Norcott, Assistant
      Appellate Defender, Helena, Montana

   For Appellee:

      Steve Bullock, Montana Attorney General, Micheal S. Wellenstein,
      Assistant Attorney General, Helena, Montana

      Gina Dahl, Hill County Attorney, Havre, Montana

          Submitted on Briefs: March 16, 2011

              Decided: April 20, 2011

Filed:

    _____
          Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     On November 24, 2009, a Hill County District Court jury convicted Mick Grant (Grant) of aggravated assault, a felony, in violation of § 45-5-202, MCA. Grant argues the court's actions during voir dire prevented him from obtaining an impartial jury, and seeks reversal of his conviction. We consider the following issue on appeal:

¶2     Whether the District Court prevented Grant from obtaining an impartial jury, thereby violating his constitutional rights.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Grant was arrested after his then-girlfriend, Loretta Fitzhugh, called police to report that he had assaulted her. Fitzhugh suffered a broken jaw in the incident. Grant admitted causing Fitzhugh's injuries, but claimed he had acted in self-defense. Since the facts of the incident are not relevant to the limited issue presented on appeal, we need not address them in further detail.

¶4     A key issue in the State's case for aggravated assault was whether Fitzhugh's injuries could be considered "protracted." "Protracted" is part of the definition of "serious bodily injury" applicable in this case, which was required to prove felony aggravated assault. Section 45-2-101(66)(a)(ii), MCA. The State planned on calling two doctors as expert witnesses to testify to the "protracted impairment" caused by Fitzhugh's injuries. During voir dire, Grant's counsel sought to explore jurors' concepts of the word "protracted," which he alleges was necessary to evaluate potential juror bias as to the doctors' testimony.

2

¶5     Defense counsel made clear his intention to question each juror about his or her understanding of "protracted," and did question six jurors in succession. After the sixth juror, the court interjected, "Mr. White, excuse me, I think your point is made . . . [t]his is the sort of thing the jury can discuss in deliberations. The instruction they will receive. They'll have to define lots of words. I think you made your point. So please move on." White objected, stating that he still had plenty of time left in voir dire, but the court did not modify its directive. White then inquired whether the remainder of the jury, by show of hands, disagreed with the definition of protracted injury as one that is "long-term" and has "complications that are unexpected," as opposed to one that "is addressed normally" and "heals as expected." When no hands were raised, White stated, "Okay. Thank you. With that, Judge, I believe my voir dire is complete and I pass the jury for cause."

¶6     The parties then exercised their peremptory challenges and agreed upon the jury pool. Before the selected jurors were readmitted into the courtroom, White again objected that his voir dire was cut short. He argued it was unfair that the State had taken more than an hour for voir dire, while he was "cut short at 45" and was thereby not allowed "to voir dire the final 20 or so panel members on the point that I wanted to voir dire them on." The court explained the reason it had cut off that line of questioning was "because I looked at the definition of serious bodily injury . . . [a]nd the definition proposed by the State appears to be the definition of the statute." The court continued, "I didn't believe it was a good use of time to ask each juror what they thought protracted meant and then go out as a jury, have to define that and then perhaps many other words

3

and then there were a number of different options for the definition of serious bodily injury for them to find." White responded, "I understand, Judge." The court then continued, "[b]ut you could have continued with other things and you chose to stop." White reasserted that he "felt what each of them had to say about protracted is directly relevant to their view, you know, of this case." The court responded, "[a]nd I didn't and you will argue it . . . [t]hat is for argument and not voir dire."

¶7 The jury subsequently convicted Grant of aggravated assault, and he timely appealed. His sole argument on appeal is that the court's actions in cutting short his counsel's juror-by-juror inquiry of their understanding of "protracted" deprived him of the right to an impartial jury.

## STANDARD OF REVIEW

¶8 A district judge has "great latitude in controlling voir dire." *State v. LaMere*, 190 Mont. 332, 339, 621 P.2d 462, 466 (1980). We review a court's control of voir dire for abuse of discretion. *State v. Michaud*, 2008 MT 88, ¶ 13, 342 Mont. 244, 180 P.3d 636.

## DISCUSSION

¶9 *Whether the District Court prevented Grant from obtaining an impartial jury, thereby violating his constitutional rights.*

¶10 The right to an impartial jury is guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution. Grant cites *LaMere*, 190 Mont. at 338, 621 P.2d at 465, for the proposition that this right is exercised

4

through the voir dire process: "[t]he defendant is entitled to an impartial jury and the purpose of voir dire is to expose any possible biases." *Id*. at 337-38, 621 P.2d at 465.

¶11 The specific question before us is whether the District Court's direction to Grant's counsel to cease his juror-by-juror inquiry as to interpretations of the word "protracted" constituted an abuse of discretion. We must balance Grant's essential right to an impartial jury with the broad discretion a trial court has to oversee the administration of trial. A trial judge must "be able to set reasonable limits on voir dire." *Id.* at 338, 621 P.2d at 465. The court must balance the need for thorough investigation of possible juror bias with the "duty to conduct the trial in a speedy and fair manner," and "has wide latitude in so doing." *Id*. at 339, 621 P.2d at 466. The reasonable limits to be set must have due regard for fairness to both parties. *Borkoski v. Yost*, 182 Mont. 28, 32, 594 P.2d 688, 690 (1979).

¶12 Grant argues the District Court prevented him from adequately exploring juror biases on a key issue to the case: whether Fitzhugh's injuries met the applicable definition of "serious bodily injury." The State intended to call two doctors to testify that Fitzhugh's injuries resulted in protracted impairment. Grant contends the line of questioning halted by the District Court was necessary to determine whether jurors would listen to the doctors' testimony impartially. His opening brief contends, "[p]erhaps a juror had a medical issue that was not properly diagnosed or strong feelings about the medical professionals and their expertise in diagnosing medical issues. In order to expose these types of impartiality [sic], defense counsel needed to probe beyond the

5

surface level and question jurors regarding the doctors' expected testimony." He continues, "[c]ounsel was not allowed to question jurors beyond the surface level. The judge stopped counsel from questioning jurors regarding the doctors' expected testimony."

¶13 We cannot agree that prohibiting individual questioning on the meaning of "protracted" foreclosed Grant's ability to explore possible biases relating to testimony of medical professionals. While Grant complains he was cut off from explaining the reasons behind his focus on "protracted," the simple fact remains he did not attempt to remedy the issue. The court did not prevent Grant from inquiring into jurors' attitudes and biases toward the testimony of medical professionals, or the jurors' previous medical history and experiences with doctors. Alternative questions would have been more likely to reveal such experiences and prejudice resulting therefrom.

¶14 It was within the District Court's discretion to limit counsel's insistent focus on one word in the statutory elements of the offense. As we have previously noted, "protracted" is a term "of common usage capable of ready understanding." *State v. Trull*, 2006 MT 119, ¶ 34, 332 Mont. 233, 136 P.3d 551 (citing *State v. Nye*, 283 Mont. 505, 513, 943 P.2d 96, 102 (1997)). While Grant argues that "protracted" may mean different things to different people despite its ready understandability, counsel's repetitive questioning as to jurors' understanding of the word justifiably struck the District Court as taking on elements of argument that the victim's injury was not of a protracted nature, rather than inquiry into juror bias. A district court has the duty to ensure orderly, fair

proceedings, and is entrusted with discretion to set reasonable limits on the exercise of voir dire to that end. *LaMere*, 190 Mont. at 338, 621 P.2d at 465. The District Court's actions in curtailing examination of jurors' understanding of a readily-understandable word after considerable time spent doing so were not outside the bounds of the court's discretion. The court therefore did not violate Grant's constitutional right to an impartial jury.

¶15 Because we conclude the District Court did not abuse its discretion in controlling voir dire, we do not reach Grant's argument that errors in the jury selection process require automatic reversal of his conviction.

¶16 Affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JIM RICE